# FEIN *v.* SELECTIVE SERVICE SYSTEM LOCAL BOARD NO. 7 OF YONKERS, NEW YORK, ET AL.

No. 70–58.   Argued October 12, 1971—Decided March 21, 1972

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN and WHITE, JJ., joined. DOUGLAS, J., filed a dissenting opinion, *post*, p. 381. MARSHALL, J., filed a dissenting opinion, in which STEWART, J., joined, *post*, p. 387. POWELL and REHNQUIST, JJ., took no part in the consideration or decision of the case.

*Michael B. Standard* argued the cause for petitioner. With him on the briefs was *David Rosenberg.*

*Solicitor General Griswold* argued the cause for respondents. With him on the brief were *Assistant Attorney General Gray, Morton Hollander,* and *Robert E. Kopp.*

*Melvin L. Wulf* filed a brief for the American Civil Liberties Union as *amicus curiae* urging reversal.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

Petitioner Oliver T. Fein is a doctor of medicine. In February 1969 he filed this pre-induction suit in the United States District Court for the Southern District of New York. Jurisdiction was asserted under the federal-question statute, 28 U. S. C. § 1331, under the civil rights statute, 28 U. S. C. § 1343, and under the federal-officer statute, 28 U. S. C. § 1361. Fein challenged, on

due process grounds, the constitutionality of his Selective Service appeal procedures and sought declaratory and injunctive relief that would prevent his induction into military service. The defendants are Fein's local board at Yonkers, New York, the Appeal Board for the Southern District, the State Selective Service Director, and the National Appeal Board.

In an unreported memorandum decision, the District Court dismissed the complaint for want of jurisdiction. A divided panel of the Second Circuit affirmed. 430 F. 2d 376 (1970). Certiorari was granted, 401 U. S. 953 (1971), so that this Court might consider the important question whether § 10 (b)(3) of the Military Selective Service Act of 1967, 50 U. S. C. App. § 460 (b)(3),[1] permits this pre-induction challenge to Selective Service appeal procedures.

---

[1] "The decisions of such local board shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. . . . The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President. The President, upon appeal or upon his own motion, shall have power to determine all claims or questions with respect to inclusion for, or exemption or deferment from training and service under this title . . . and the determination of the President shall be final. No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution . . . after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant. . . ." 50 U. S. C. App. § 460 (b)(3).

Section 10 (b)(3) of the 1967 Act was amended by Pub. L. 92–129, § 101 (a)(26), 85 Stat. 351, approved Sept. 28, 1971. The amendment, however, did not change that portion of § 10 (b)(3) quoted above.

# I

Fein, born May 5, 1940, registered with his Yonkers local board at age 18. He was assigned a II–S student deferment during his undergraduate years at Swarthmore College and, subsequently, during the period of his attendance at Case-Western Reserve University School of Medicine. Upon graduation from medical school, Fein was assigned a II–A occupational deferment because of his internship at Cleveland Metropolitan General Hospital.

In September 1967, while still an intern, Fein wrote his local board "to declare myself a conscientious objector to war and the institution which propagates war, the military." He requested and received SSS Form 150 for conscientious objectors. He promptly completed and returned the form to the local board.

In the form Fein stated: He believes in a Supreme Being. The beliefs from which his conscientious objection springs include the concepts that "human beings are primarily 'good,'" that this goodness "can only be realized, if human beings are allowed to fulfill their potential," and that "all human beings are fundamentally equal, in terms of their value as human beings." War violates "this essential being in all men . . . ." It "fosters irresponsibility for inhuman and cruel acts." It "demands a style of life, which is violent and hierarchical. It curbs and extinguishes rather than expands man's potential." The "substance of my beliefs stems from this common foundation of all religions. Thus my beliefs are not merely a personal moral code, but are ideals which emanate from centuries of religious tradition." He attributes the shaping of his beliefs to four principal sources: his parents, the church he formerly belonged to (a Lutheran body), the civil rights movement, and medicine. He believes "in the power

and values of moral and ethical force," but rejects "violent force" except perhaps in defense of self or of a loved one. His ideals were not articulated by age 18, but he began to formulate them at Swarthmore. Then followed a trip to the South; his break with his church; a summer in Germany where he learned of "biased American journalism about Cuba"; his helping organize a trip by students to Cuba; his interest in SNCC; his work in the slums of San Francisco; his settling in Cleveland's "Negro ghetto" during his first year at medical school; his then "full commitment to non-violence"; his contact with Students for a Democratic Society, which provided "a framework for working out my ideals about justice and equality"; and his "commitment to cooperative living and the poor community [which] stands as a mature expression of my beliefs."

Upon receiving Fein's Form 150 and letters supportive of his claim, the local board invited him to appear personally before it. He did so on November 15, 1967. After the interview the board denied him a I–O classification "at this time." Inasmuch as Fein then held his II–A classification, this action by the board was consistent with Selective Service Regulation 32 CFR § 1623.2 providing that a registrant be placed in the lowest class for which he is eligible.

In February 1968, however, Fein was reclassified I–A. He immediately asked for another personal appearance before the board. The request was granted and he appeared on May 27. The board then classified him as I–O and thus gave him his desired conscientious objector classification.

On June 4 the State Director, pursuant to 32 CFR § 1626.1, wrote the appeal board requesting an appeal and stating, "It is our opinion that the registrant would not qualify for a I–O classification as a conscientious objector." Notice of this was given Dr. Fein by mail.

Fein then wrote seeking "a statement indicating the basis for the State Director's appeal" and an opportunity to reply. No explanation was forthcoming.

The local board forwarded the file to the appeal board. Accompanying the file was a so-called "brief." This, as petitioner has conceded,[2] was merely a summary of the file prepared by a lay employee of the board. The appeal board, by a unanimous 4–0 vote on June 20, classified Dr. Fein I–A and thus rejected his claim to conscientious objector status. The board stated no reasons for its decision. Fein was notified of his reclassification.

Under 32 CFR § 1627.3[3] a registrant was not entitled to take an appeal to the presidential, or national, appeal board from an adverse classification by the state appeal board made by a unanimous vote. Fein was in this position. Accordingly, he wrote the National Director of Selective Service in July and asked that the Director appeal on his behalf under 32 CFR § 1627.1 (a). Fein's letter to the Director was detailed. It emphasized his above-stated beliefs and the way of life to which those beliefs had guided him. "It should be clear, that I am willing to serve my country, but only in activities consistent with my conscience." Fein outlined the administrative proceedings and listed five claimed inequities: (1) the appeal board's rejection, upon the appeal by the State Director, of the local board's classification; (2) the failure of the Director to state the basis for his challenge; (3) the absence of an opportunity to submit supplemental information before the file was forwarded; (4) the absence of an opportunity to rebut the State Director's decision to take an appeal; and (5) the absence of an opportunity for a personal appearance before the appeal board.

---

[2] Tr. of Oral. Arg. 22.

[3] The provision is now 32 CFR § 1627.1 (b).

On July 31 Fein was ordered to report for induction September 6.

The National Director, however, complied with Fein's request and noted an appeal. Fein's outstanding induction order was canceled. He again asked the State Director for a statement of reasons. He was now advised that in the State Director's opinion he did not qualify for a Class I–O deferment and that the decision to appeal "was based upon the information contained in [his] selective service file."

On November 26, 1968, the national board, by a vote of 3–0, classified Dr. Fein I–A. No reason for this action was stated.

No new order that Fein report for induction has been issued.

Fein then instituted this suit. The complaint alleged that the statute and regulations governing Fein's classification and appeal violated the Due Process Clause of the Fifth Amendment in that they did not provide for a statement of reasons to the registrant for the State Director's decision to appeal, or for the appeal board's subsequent decision denying Fein a I–O classification. It also alleged that the defendants acted unconstitutionally by failing to provide Fein with the statements of reasons, by failing to permit him to submit additional material for consideration by the appeal boards, and by refusing him an opportunity to rebut the State Director's decision to appeal.

The District Court did not reach the merits of the constitutional claims. While expressing concern about Fein's ability to establish jurisdiction, the court assumed, *arguendo,* that he had done so, but then concluded that the suit was barred by § 10 (b)(3).

The Second Circuit affirmed, 430 F. 2d, at 377–380, relying, as did the District Court, upon *Oestereich* v. *Selective Service Board,* 393 U. S. 233 (1968); *Clark* v.

*Gabriel,* 393 U. S. 256 (1968); and *Boyd* v. *Clark,* 287 F. Supp. 561 (SDNY 1968), aff'd, 393 U. S. 316 (1969). One judge, in separate concurrence, 430 F. 2d, at 380, also thought that Fein had failed to establish the jurisdictional amount required under 28 U. S. C. § 1331. The third judge, citing the same cases as did the majority, dissented on the statutory issue; on the merits he would have ruled in Fein's favor. 430 F. 2d, at 380–388.

## II

The case pivots, of course, upon the meaning and reach of § 10 (b)(3), and this Court's decisions in *Oestereich, Gabriel,* and *Boyd,* all *supra,* and in *Breen* v. *Selective Service Board,* 396 U. S. 460 (1970).

Section 10 (b)(3) states flatly that a classification decision of the local board "shall be final, except where an appeal is authorized . . ." and that the classification decision on appeal also "shall be final. . . ." It further provides, "No judicial review shall be made of the classification or processing of any registrant . . . except as a defense to a criminal prosecution . . . after the registrant has responded either affirmatively or negatively to an order to report for induction . . . ." Even then, the review "shall go to the question of the jurisdiction . . . only when there is no basis in fact for the classification . . . ."

The finality language appeared in conscription statutes prior to the 1967 Act. See Selective Draft Act of May 18, 1917, § 4, 40 Stat. 80; Selective Training and Service Act of 1940, § 10 (a)(2), 54 Stat. 893; and Selective Service Act of 1948, § 10 (b)(3), 62 Stat. 619. The Court construed this finality language, however, as indicating a congressional intent to restrict only the scope of judicial review and not to deprive the registrant of all access to the courts. See, for example, *Estep* v. *United States,* 327 U. S. 114 (1946), and *McKart* v.

*United States,* 395 U. S. 185 (1969). But judicial relief was confined to the "no basis in fact" situation. *Estep, supra,* at 122–123; *McKart, supra,* at 196.

The "except" clause and the "no basis in fact" language came into § 10 (b)(3) with the 1967 statute by way of prompt congressional reaction provoked by the Second Circuit's decision in *Wolff* v. *Selective Service Local Bd.,* 372 F. 2d 817 (1967). See H. R. Rep. No. 267, 90th Cong., 1st Sess., 30–31; 113 Cong. Rec. 15426.[4]

Section 10 (b)(3), as so amended, was promptly challenged. In *Oestereich* the Court refrained from striking down the statute on constitutional grounds. It held, however, that pre-induction judicial review was available to that petitioner who, as a divinity student, claimed his local board had wrongfully denied him a statutory exemption from military service. To rule otherwise "is to construe the Act with unnecessary harshness." And, "No one, we believe, suggests that § 10 (b)(3) can sustain a literal reading." This construction, it was said, leaves the section "unimpaired in the normal operations of the Act." 393 U. S., at 238. See *Gutknecht* v. *United States,* 396 U. S. 295, 303 (1970), where reference was made to the "unusual circumstances" of *Oestereich.*

In the companion *Gabriel* case, on the other hand, the registrant was asserting a conscientious objector claim. The Court said:

"Oestereich, as a divinity student, was by statute unconditionally entitled to exemption. Here, by contrast, there is no doubt of the Board's statutory authority to take action which appellee challenges, and that action inescapably involves a de-

---

[4] S. Rep. No. 209, 90th Cong., 1st Sess., 10, contained the observation that a registrant may also challenge his classification by post-induction habeas corpus. See *Witmer* v. *United States,* 348 U. S. 375, 377 (1955).

termination of fact and an exercise of judgment. . . . To allow pre-induction judicial review of such determinations would be to permit precisely the kind of 'litigious interruptions of procedures to provide necessary military manpower' (113 Cong. Rec. 15426 (report by Senator Russell on Conference Committee action)) which Congress sought to prevent when it enacted § 10 (b)(3)." 393 U. S., at 258–259.

The constitutionality of the statute again was upheld. *Id.,* at 259. MR. JUSTICE DOUGLAS, separately concurring, noted hypothetical fact situations as to which he might take a different view and then observed:

"But in my view it takes the extreme case where the Board can be said to flout the law, as it did in *Oestereich* v. *Selective Service Bd.,* [393 U. S. 233], to warrant pre-induction review of its actions." 393 U. S., at 260.

*Oestereich* was complemented by *Breen* a year later with respect to a registrant statutorily entitled to a deferment rather than to an exemption. See also *Kolden* v. *Selective Service Board,* 397 U. S. 47 (1970).

Finally, pre-induction review was denied under § 10 (b)(3) in *Boyd* v. *Clark,* 287 F. Supp. 561 (SDNY 1968), a decision affirmed here, 393 U. S. 316 (1969), with only a single reference to *Gabriel,* decided just four weeks before. In *Boyd,* four registrants, each classified I–A, challenged student deferment on the ground that it discriminated against those financially unable to attend college. They did not otherwise contest their own I–A classifications.

Thus *Oestereich, Gabriel, Breen,* and *Boyd* together establish the principles (a) that § 10 (b)(3) does not foreclose pre-induction judicial review in that rather rare instance where administrative action, based on reasons unrelated to the merits of the claim to exemption or

deferment, deprives the registrant of the classification to which, otherwise and concededly, he is entitled by statute, and (b) that § 10 (b)(3) does foreclose pre-induction judicial review in the more common situation where the board, authoritatively, has used its discretion and judgment in determining facts and in arriving at a classification for the registrant. In the latter case the registrant's judicial review is confined—and constitutionally so—to the situations where he asserts his defense in a criminal prosecution or where, after induction, he seeks a writ of habeas corpus. By these cases the Court accommodated constitutional commands with the several provisions of the Military Selective Service Act and the expressed congressional intent to prevent litigious interruption of the Selective Service process.

## III

These principles do not automatically decide Fein's case. The doctor, unlike Oestereich and unlike Breen, cannot and does not claim a statutory exemption or a statutory deferment on the basis of objectively established and conceded status. On the other hand, while *Gabriel* focuses on the administrative and discretionary process, it does not necessarily foreclose Fein's claim. This is so because Fein challenges the constitutionality of the very administrative procedures by which, he claims, the presentation of his case was adversely affected.

This was the aspect of the *Oestereich* and *Breen* decisions that concerned Mr. Justice Harlan. 393 U. S., at 239; 396 U. S., at 468–469. He would have allowed pre-induction judicial review of a procedural challenge on constitutional grounds if it presented no "opportunity for protracted delay" in the system's operations, and if the issue was beyond the competence of the board to hear and determine. This view, however, commanded the vote of no other member of the Court.

We again conclude that the line drawn by the Court between *Oestereich* and *Breen,* on the one hand, and *Gabriel* and, inferentially, *Boyd,* on the other, is the appropriate place at which, in the face of the bar of § 10 (b)(3), to distinguish between availability and unavailability of pre-induction review. We therefore adhere to the principles established by those cases.

We further conclude that, as measured against the facts of Fein's case, it is *Gabriel,* and not *Oestereich* and *Breen,* that is controlling. Unlike the registrants in *Oestereich* and *Breen,* Fein's claimed status is not one that was factually conceded and thus was assured by the statute upon objective criteria. His administrative classification action was, in contrast, a product of the "process" and the "system of classification," as the petitioner stressed at oral argument.[5] It turned "on the weight and credibility of the testimony," as MR. JUSTICE DOUGLAS noted in his concurrence in *Gabriel,* 393 U. S., at 259. And it was "dependent upon an act of judgment by the Board." *Gabriel,* 393 U. S., at 258.

The case strikes us, as did *Gabriel,* as representative of a category that, if allowed pre-induction review, would tend to promote the "litigious interruptions of procedures to provide necessary military manpower" that Congress intended to prevent. 113 Cong. Rec. 15426. The conscientious objector claim is one ideally fit for administrative determination.

We are not persuaded, as has been suggested,[6] that the local board's grant of the I-O classification equates with the conceded exemption and deferment involved in *Oestereich* and *Breen.* Objective certainty of status is lacking; in addition, the respective rulings of the two appeal boards were themselves based on an evaluation of the same file and yet were opposite to that of the

---

[5] Tr. of Oral Arg. 13, 18.

[6] *Id.,* at 16–18.

local board. It is true that in *Oestereich* and *Breen* a result favorable to the registrant was also reversed, but there the change came about only by the board's consideration of extraneous circumstances apart from the merits of the underlying claims.

Finally, we find no merit in the petitioner's argument, apparently asserted for the first time in this Court, that a local board's determination, on a conscientious objector claim, favorable to the registrant is not amenable to the appeal procedures prescribed by the Act. Section 10 (b) (3), by its terms, makes a board's decision final subject to appeal and we see no confinement of that right of appeal to the registrant alone so as to nullify the regulations' express grant of appellate power to the State Director as well as to the registrant. The statute, furthermore, is specific as to the President's right to review.

The conclusion we have reached makes it unnecessary to consider in any detail the propositions, urged by the respondents, that the petitioner has not demonstrated the presence of the jurisdictional amount required under 28 U. S. C. § 1331, and that his arguments are premature because he is presently not the subject of an outstanding induction order.

IV

All this does not mean, however, that this decision assures Dr. Fein's immediate induction into military service. Events since the inception and trial of the case indicate otherwise:

A. *The 1971 Statute.* By Pub. L. 92–129, § 101 (a) (36), 85 Stat. 353, approved September 28, 1971, the following new section, 50 U. S. C. App. § 471a (1970 ed. Supp. I), was added to the 1967 Act, now renamed the Military Selective Service Act:

"Procedural Rights

"Sec. 22. (a) It is hereby declared to be the purpose of this section to guarantee to each regis-

trant asserting a claim before a local or appeal board, a fair hearing consistent with the informal and expeditious processing which is required by selective service cases.

"(b) Pursuant to such rules and regulations as the President may prescribe—

"(1) Each registrant shall be afforded the opportunity to appear in person before the local or any appeal board of the Selective Service System to testify and present evidence regarding his status.

.        .        .        .        .

"(4) In the event of a decision adverse to the claim of a registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision."

A registrant thus is now statutorily entitled to a personal appearance before a local or appeal board and, on request, to a statement of reasons for any decision of the board adverse to him. This 1971 addition to the statute does not, by its terms, purport to be retroactive.

B. *The Emerging Regulations.* In implementation of the new statute, the administrative regulations have been undergoing change. Some amendments were promulgated effective December 10, 1971. 36 Fed. Reg. 23374–23385. Others were promulgated effective March 11, 1972. 37 Fed. Reg. 5120–5127. From these it appears that all, or nearly all, the procedural features about which Dr. Fein complains in the present case have been changed administratively. Specifically: (1) When an appeal is taken by the State Director "he shall place in the registrant's file a written statement of his reasons for taking such appeal." The local board shall notify the registrant in writing of the action and the reasons therefor, and advise him that the registrant may re-

quest a personal appearance before the appeal board. §§ 1626.3 (a) and (b). (2) At such personal appearance the registrant may present evidence, discuss his classification, point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file that he believes the local board has overlooked or to which it has given insufficient weight. He may present such further information as he believes will assist the board. The registrant, however, may not be represented before an appeal board by anyone acting as attorney and he shall not be entitled to present witnesses. §§ 1624.4 (e) and (d). (3) If the appeal board classifies the registrant in a class other than the one he requested, it shall record its reasons therefor in his file. The local board shall inform the registrant of such reasons in writing at the time it mails his notice of classification. § 1626.4 (i). (4) On the director's appeal to the national board the registrant may request an appearance. § 1627.3 (d). At that appearance the registrant may present evidence, other than witnesses, bearing on his classification. There, too, he may discuss his classification, point out the class or classes in which he thinks he should have been placed, and direct attention to any information in his file that he believes the local board overlooked or to which it has given insufficient weight. He may also present such further information as he believes will assist the national board in determining his proper classification. §§ 1627.4 (c) and (e). (5) If the national board classifies the registrant in a class other than the one he requested it shall record its reasons therefor in his file and on request by the registrant it shall furnish him a brief statement of the reasons for its decision. § 1627.4 (h).

Thus, under present procedure effective in part since December 10, 1971, and in part since March 11, 1972,

complaints about one's inability to appear before appeal boards, about not being given reasons for adverse classifications, and about inability to present additional material at the appellate stages are all alleviated and, indeed, eliminated.

C. *The Change in the Government's Position.* In their brief filed prior to the adoption of the 1971 Act, the respondents acknowledged the appearance of "a relatively recent line of authority" exemplified by *United States* v. *Haughton,* 413 F. 2d 736 (CA9 1969), to the effect that the failure of a local board to articulate in writing the reason for its denial of a conscientious objector classification is a fatal procedural flaw when the registrant has made a prima facie case for such status.[7] Brief 52–53. The rationale is that some statement of reasons is necessary for "meaningful" review [8] of the administrative decision when the registrant's claim has met the statutory criteria or has placed him prima facie within the statutory exemption, and his veracity is the principal issue.

The respondents appropriately noted, however, that these decisions were all so-called post-induction cases in the sense that they were appeals from convictions under § 12 (a), 50 U. S. C. App. § 462 (a). The respondents accordingly took the position that this line of authority, however appropriate it might be for post-induction review, did not support or justify an exception

---

[7] See also *United States* v. *Edwards,* 450 F. 2d 49 (CA1 1971); *United States* v. *Lenhard,* 437 F. 2d 936 (CA2 1970); *Scott* v. *Commanding Officer,* 431 F. 2d 1132 (CA3 1970); *United States* v. *Broyles,* 423 F. 2d 1299 (CA4 1970); *United States* v. *Stetter,* 445 F. 2d 472 (CA5 1971); *United States* v. *Washington,* 392 F. 2d 37 (CA6 1968); *United States* v. *Lemmens,* 430 F. 2d 619 (CA7 1970); *United States* v. *Cummins,* 425 F. 2d 646 (CA8 1970); *United States* v. *Pacheco,* 433 F. 2d 914 (CA10 1970).

[8] See *Gonzales* v. *United States,* 348 U. S. 407, 415 (1955).

to the bar of § 10 (b)(3) against pre-induction review of the processing or classifying of registrants.

In a memorandum filed here since the 1971 Act in No. 70–251, *Joseph* v. *United States,* cert. granted, 404 U. S. 820 (1971), the Government has now taken the position that "[a]lthough this judicial rule [of *Haughton* and its progeny] finds little support in early precedent . . . we do not think it appropriate to contend that it is erroneous." The Government also notes that the requirement for an administrative statement of reasons "seems fully consistent with the new statutory . . . and regulatory . . . provisions on this point." Memo 13, 14.

While *Joseph* also is a conviction case and is not one on pre-induction review, its obvious significance for Fein is that if the doctor is ever again called for induction, the rule of *Haughton* will provide a defense for him unless and until the requirements of the new statute and regulations are fulfilled. Whether this necessitates a complete reprocessing of Fein's case is a matter we leave in the first instance to the administrative authorities.

The judgment of the Court of Appeals is therefore to be affirmed. We express no view upon the merits of Dr. Fein's conscientious objector claim other than to observe the obvious, namely, that his claim is not frivolous.

*Affirmed.*

Mr. Justice Powell and Mr. Justice Rehnquist took no part in the consideration or decision of this case.

Mr. Justice Douglas, dissenting.

I

Today the Court approves a construction of § 10 (b) (3) of the Military Selective Service Act of 1967, 50

U. S. C. App. § 460 (b)(3),[1] which raises serious questions of procedural due process. Doctor Fein was classified as a conscientious objector by his local board. The State Director appealed, but gave no reason for this extraordinary action.[2] The appeal board then reclassified Dr. Fein I–A. It, too, gave no reasons.

We explained the nature of the "hearing" required by the Due Process Clause of the Fifth Amendment in *Morgan* v. *United States*, 304 U. S. 1, 18–19:

> "The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."

See *Mullane* v. *Central Hanover Trust Co.*, 339 U. S. 306, 313; *Jenkins* v. *McKeithen*, 395 U. S. 411; *Greene*

---

[1] Section 10 (b)(3) reads in pertinent part as follows:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

[2] Except the somewhat cryptic statement that "[i]t is our opinion that the registrant would not qualify for a I–O classification as a conscientious objector."

v. *McElroy,* 360 U. S. 474, 493; *Baltimore & Ohio R. Co.*
v. *United States,* 298 U. S. 349, 368–369.

*Morgan* involved property rights—rates for stockyard
services. But the Due Process Clause protects "life"
and "liberty" as well as "property." See *Kwong Hai
Chew* v. *Colding,* 344 U. S. 590, 596–598. If a man,
contrary to his scruples, is forced to go overseas to battle,
he is deprived of his "liberty," if not his "life."

When administrative orders deprive a person of prop-
erty without a full and fair opportunity to object, this
Court has been most reluctant to defer judicial review
until after those orders have taken effect. See *Opp Cot-
ton Mills* v. *Administrator,* 312 U. S. 126, 152–153;
*United States* v. *Illinois Central R. Co.,* 291 U. S. 457,
463; *Londoner* v. *City & County of Denver,* 210 U. S.
373, 385. Judicial scrutiny has been particularly close
where, as here, review is conditioned upon submitting to
the risk of substantial penalties should the order prove
to have been validly made. See *Oklahoma Operating
Co.* v. *Love,* 252 U. S. 331; *Ex parte Young,* 209
U. S. 123. Cf. *Reisman* v. *Caplin,* 375 U. S. 440, 446–
450. We should require no less when personal liberty is
at stake.[3]

How can we possibly affirm the judgment below in
light of the constitutional dimension of the problem?
As respects his claim to "liberty," is Fein to be relegated
to the procedures of a criminal prosecution when Con-
gress was meticulous to provide for its resolution in the
administrative process? No such downgrading of rights

---

[3] Some courts, however, have been more zealous in their exalta-
tion of property rights than they have of constitutionally safe-
guarded individual liberties. See, *e. g., Poole* v. *State,* 244 Ark. 1222,
1225, 428 S. W. 2d 628, 630:

"The right of an individual to acquire and possess and protect
property is inherent and inalienable and declared higher than any
constitutional sanction in Arkansas . . . ."

would be tolerated in a "property" case; why are we less mindful of the requirements of due process when a man's "liberty" is at stake?

## II

Section 10 (b)(3) purports to defer judicial review of Selective Service System classification decisions to the defense of a criminal prosecution for failure to report for induction. It represents a congressional response to the concern that widespread pre-induction review of Selective Service classification decisions would seriously impede the ability of the System to process manpower for the Armed Forces. See remarks of Senator Russell, 113 Cong. Rec. 15426. We held in *Oestereich* v. *Selective Service Board,* 393 U. S. 233, however, that the statute cannot be read literally. "For while it purports on its face to suspend the writ of habeas corpus as a vehicle for reviewing a criminal conviction under the Act, everyone agrees that such was not its intent." *Id.,* at 238. We held that it must be interpreted to permit pre-induction review in that exceptional class of cases involving "a clear departure by the Board from its statutory mandate." 393 U. S., at 238. Because Ostereich's local board had employed unauthorized and "lawless" procedures to deprive him of an exemption to which he was entitled by statute, we further held that § 10 (b)(3) was no bar to the suit. See also *Breen* v. *Selective Service Board,* 396 U. S. 460.

The courts below, relying on *Clark* v. *Gabriel,* 393 U. S. 256, held that, unlike the ministerial exemption (IV–D) at issue in *Oestereich* and the student deferment (II–S) in *Breen,* the conscientious objector exemption (I–O) is committed to the discretion of the board, and contemplates the complex evidentiary and factual determinations which § 10 (b)(3) primarily intended to insulate from pre-induction review. Were Fein com-

plaining that his appeal board had no basis in fact to discontinue his conscientious objector exemption, this distinction would be significant.

The fact that Fein was classified I–O by his local board (rather than IV–D or II–S) before being stripped of his exemption does not, however, distinguish his case from *Oestereich*. Indeed, it is *Clark* v. *Gabriel, supra,* on which the majority and lower court placed such heavy reliance for the opposite proposition, that demonstrates the applicability of *Oestereich* to the present situation.

Gabriel's conscientious objector claim had been rejected by his local board, after "evaluating evidence and . . . determining whether a claimed exemption is deserved." *Oestereich, supra,* at 238. His basic argument was that there was no basis in fact to deny him his exemption. As the Court said, however, there was

> "no doubt of the Board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment. *By statute, classification as a conscientious objector is expressly conditioned on the registrant's claim being 'sustained by the local board.'*" 393 U. S., at 258 (emphasis supplied).

But Fein's claim, unlike that of Gabriel, *has* been "sustained by the local board." Thus, by statute, it is mandatory that the exemption be awarded him—subject, of course, to subsequent action in accordance with lawful, authorized procedures. But this is the situation which obtained in *Oestereich*. The exemption at issue in that case could also have been removed in accord with lawful procedures. The crucial similarity is that both Oestereich and Fein have met the preliminary hurdle of demonstrating to the local board their statutory fitness for a given exemption.

The nature of Dr. Fein's claim is that the Selective Service System has been "blatantly lawless," not in taking away his exemption *per se,* but in doing so in a manner which violates the mandate of § 1 (c) of the Act, 50 U. S. C. App. § 451 (c), that the system be administered in a way "which is fair and just . . . ."

It should by now be undisputed that an essential of a "fair and just" procedure is the registrant's right to be heard by the agency in the system that deprives him of his liberty.[4] To be meaningful, that hearing must include the right to appear, and to be apprised of and given a chance to reply to adverse information contained in one's file. Dr. Fein was afforded none of these rights. The regulations did not permit a personal appearance before the appeal board. Dr. Fein was not informed of the reasons for the appeal. He had no right to submit a statement of his own, as the State Director, the person appealing, had not submitted a statement. 32 CFR § 1626.12. Dr. Fein never even received a statement of reasons for the appeal board's reclassification, a defalcation which the Solicitor General has conceded to be error in a similar context. Memorandum for the United States, *Joseph* v. *United States,* No. 70–251. See also Memorandum for the United States, *Lenhard* v. *United States,* No. 71–5840.

Like Oestereich's, therefore, Fein's complaint is "unrelated to the merits of granting or continuing that exemption," 393 U. S., at 237. It is instead a challenge to the

---

[4] See, *e. g., Clay* v. *United States,* 403 U. S. 698; *Mulloy* v. *United States,* 398 U. S. 410, 416; *Gonzales* v. *United States,* 348 U. S. 407, 417; *Simmons* v. *United States,* 348 U. S. 397, 405. See also *Greene* v. *McElroy,* 360 U. S. 474, 493; *Morgan* v. *United States,* 304 U. S. 1, 18–19; *Baltimore & Ohio R. Co.* v. *United States,* 298 U. S. 349, 368–369; *United States* v. *Thompson,* 431 F. 2d 1265, 1271; *United States* v. *Cabbage,* 430 F. 2d 1037, 1039–1041; *United States* v. *Cummins,* 425 F. 2d 646; *United States* v. *Owen,* 415 F. 2d 383, 388–389; *Wiener* v. *Local Bd. No. 4,* 302 F. Supp. 266, 270.

basic fairness of the administrative process itself. And, while Fein himself characterizes his attack as a "constitutional" one, the procedural guarantees which he says were denied him are implicit in the Act itself. It is as unlawful to employ the regulations governing the appeal procedure to deny fundamental procedural rights implicit in the statutory scheme as it was in *Oestereich* and *Breen* to use the regulations governing delinquency to work a similar deprivation.

The literalness with which the Court treats Dr. Fein's claim "does violence to the clear mandate of" § 1 (c) of the Act, and misconstrues the thrust of *Oestereich, Gabriel,* and *Breen.* Fein's claim presents a clear case for pre-induction review. As in *Oestereich,* we have here a case where the Selective Service System is itself "basically lawless." On the admittedly extraordinary facts of this case, Fein has been effectively deprived of the entire panoply of appellate remedies guaranteed to him by the Act, and put in a position wherein meaningful judicial review of the underlying classification decision has become a virtual impossibility.

Mr. Justice Marshall, with whom Mr. Justice Stewart joins, dissenting.

I dissent. Today's holding reinterprets *Oestereich* v. *Selective Service Board,* 393 U. S. 233 (1968), to establish a principle that serves no sensible purpose. If *Oestereich* is to be preserved, it must be rooted in a principle that permits pre-induction review in this case as well.

As the majority correctly observes, our decision in *Oestereich* foreclosed any further argument that § 10 (b) (3) constitutes an absolute bar to pre-induction judicial review. "No one, we believe, suggests that § 10 (b) (3) can sustain a literal reading." *Id.,* at 238. Having thus adopted in *Oestereich,* and reaffirmed in

388

*Breen* v. *Selective Service Board,* 396 U. S. 460 (1970), an interpretation of the Act that permits pre-induction review in some cases, we need decide today only whether Dr. Fein raises that sort of exceptional claim appropriate for pre-induction review.

The majority apparently holds that pre-induction review is available only where a registrant's "claimed status is . . . factually conceded and thus [is] assured by the statute upon objective criteria." *Ante,* at 376. I confess that I do not altogether understand these key words in the majority's test. But I fathom enough to conclude that the test makes little sense. Although petitioner challenges only the procedures used by the Selective Service System, and does not ask this Court to decide the merits of his conscientious objector (CO) claim, he loses his lawsuit because his entitlement to a CO classification is not "factually conceded" or "objectively certain." But the merits of petitioner's CO claim are not at issue in this pre-induction litigation. I can think of no reasons for an approach that ignores the actual pre-induction claim, and that permits pre-induction review only where "objective certainty of [the registrant's] status" exists. *Ibid.* *Oestereich* should not be recast this narrowly.

The majority says that there can be pre-induction review only when the registrant's status is assured "upon objective criteria." This, by itself, might only mean that where status turns on unconceded factual claims—as opposed to more "objectively" determined legal claims—pre-induction review is barred. But the heart of the majority's test is that pre-induction review is permitted only when there is "objective *certainty*" of status. Obviously, this approach is not immediately suggested by the words of § 10 (b)(3), which proscribes pre-induction review "of the classification or processing of any registrant." Nor does it avoid the "unnecessary

harshness" that the majority concedes *Oestereich* sought to prevent. Where the registrant's status is "objectively certain," or where the Government concedes that it will not prosecute the registrant if he refuses induction and will confess error if he submits to induction and brings a habeas corpus action, the registrant is "least jeopardized by the procedural limitations of § 10 (b)(3)." *Oestereich* v. *Selective Service Board,* 393 U. S., at 251 (STEWART, J., dissenting). Where there is no pre-induction review, the harsher burden falls on the registrant whose rights and ultimate status are not free from doubt or conceded. He is the one faced with the enormous uncertainties of a criminal prosecution for refusing induction; and should he submit to what he thinks is an illegal induction, anticipating relief through habeas corpus, his uncertain prospects make it unlikely that he could avoid the massive dislocations of induction itself (*e. g.,* giving up a job, leaving school). In short, the majority's theory of pre-induction review helps the wrong people.[1]

A viable approach to the problem of pre-induction review is to be found by comparing *Oestereich* with the other § 10 (b)(3) case decided on the same day, *Clark* v. *Gabriel,* 393 U. S. 256 (1968). In *Clark* v. *Gabriel,* we interpreted § 10 (b)(3) to bar pre-induction review where the challenged action "inescapably involves a de-

---

[1] The cases in which the majority would permit pre-induction review are not those in which Selective Service manpower gathering processes are "interrupted" to a distinctively minimal extent. "Litigious interruption" comes from the ordinary processes of any litigation, the delays built in the Federal Rules. These interruptive time delays are not significantly shortened in lawsuits where the Government makes crucial concessions at the appeal stage (as in *Oestereich*), or where the pertinent determination is whether a registrant's status is "objectively certain." A day or two of court time may be saved, but, given the duration of the entire litigation, this is insignificant.

termination of fact and an exercise of judgment"; thus, we refused to allow pre-induction review where the registrant claimed, on the facts, that he was entitled to a CO classification. However, we permitted pre-induction review in *Oestereich, supra,* where the local board's action, taken pursuant to a purportedly valid disciplinary regulation, was in claimed conflict with rights to exemption assured by statute. Cf. *Breen* v. *Selective Service Board, supra.*[2] For reasons that will become clearer below, the crucial difference for me between the cases is that in *Qestereich* (and *Breen*) the registrant challenged a purportedly valid Selective Service rule of general application, the validity of which the administrative process could not competently adjudicate before induction.

At issue in Dr. Fein's case are Selective Service appeal procedures, general rules that are said to be invalid under the Constitution. At stake is not a board determination "processing or classifying" an individual registrant,[3] but general procedures prescribing the way such determinations are made. The situation here is substantially similar to *Oestereich,* and altogether different from the one in *Clark* v. *Gabriel.* In *Oestereich,* as former Chief Judge Lumbard noted in dissent below,

> "[T]he registrant challenge[d] a procedure unauthorized by statute, while claiming that the regula-

---

[2] The majority relies on *Boyd* v. *Clark,* 287 F. Supp. 561 (SDNY 1968), which we summarily affirmed, 393 U. S. 316 (1969), with a single citation of *Clark* v. *Gabriel,* 393 U. S. 256 (1968). Although the District Court dismissed the lawsuit on two grounds—that pre-induction review was improper and that the jurisdictional amount requirement had not been met—we affirmed on the single ground that pre-induction review was improper, as our simple reference to *Clark* v. *Gabriel* was designed to indicate. That reference should not be overburdened with significance. Since those registrants, who had *never* received an induction notice, had not reached a position of finality within the system, pre-induction review was inappropriate.

[3] Section 10 (b) (3) proscribes pre-induction review "of the classification or processing of any registrant . . . ."

tion deprive[d] him of a right based on higher authority. The difference, which I do not deem significant, is that in *Oestereich* the conflict posed was between a [Selective Service] regulation—the delinquency provision—and a statutory command, the ministerial exemption." 430 F. 2d 376, 382 (1970).

Here, Selective Service appellate procedures, implemented under Selective Service regulations 32 CFR § 1626 *et seq.*, arguably conflict with the *constitutional* requirements of the Due Process Clause, "surely an a fortiori case for preinduction review." *Ibid.* In *Oestereich, Breen,* and this case, the Selective Service System relied on rules, purportedly valid, that are challenged as illegal in their general application.

In *Clark* v. *Gabriel,* the registrant challenged the factual and judgmental determination that he was not entitled to a conscientious objector classification. But Dr. Fein does not challenge that individualized judgment in his pre-induction suit. Here, the registrant's local board found him entitled to a CO classification, and then this presumptively correct classification was taken away pursuant to allegedly lawless and unconstitutional procedures.[4] The facial validity of these procedures is the only issue here. In neither *Oestereich, Breen,* nor this case would pre-induction inquiry look to discretionary determinations of the System, or to factual judgments of the local or appeal board. (Nor is there any dispute in

---

[4] The majority notes:

"It is true that in *Oestereich* and *Breen* a result favorable to the registrant was also reversed, but there the change came about only by the board's consideration of extraneous circumstances apart from the merits of the underlying claims." *Ante,* at 377.

This distinction is indeed ironic. One of Fein's basic claims in this lawsuit is that absent a statement of reasons by the Appeal Board that took away his CO classification, there is no way of knowing whether that action was based on extraneous circumstances or whether it was lawful.

our case that the challenged procedures were actually followed here.)

In my view, pre-induction judicial review should be permitted where the registrant claims that generally applied rules administered by Selective Service are invalid, and where the administrative process is not competent to decide the registrant's claim. Unlike the approach of the majority, this approach would benefit an appropriate group of registrants, without doing violence to Congress' apparent purposes in passing § 10 (b) (3). While the majority opinion in *Oestereich* was directed narrowly to the facts there presented, the decision may fairly be said to recognize that § 10 (b)(3) was intended to be an integral part of the complex machinery designed by Congress to raise an army fairly and expeditiously. In my view, § 10 (b)(3) reflected two related assumptions of Congress. First, Congress assumed procedural regularity in the administrative system. Where the general administrative procedures are valid—where procedural regularity is acknowledged—individual "classification or processing" determinations may be presumed correct, and pre-induction review would be an unwarranted interference with an orderly induction system. More generally, as I view § 10 (b)(3), Congress wanted to make clear that since it had provided an elaborate administrative procedure in which registrants have a full opportunity to raise their claims, they should not be allowed to have duplicative judicial *re*view of the administrative determinations before induction. These premises justifying a ban on pre-induction review may be undercut in particular cases, and in such cases pre-induction review should be permitted. Where, as in Dr. Fein's case, the underlying procedures of the classification system are themselves challenged—where Congress' presumption of procedural regularity is called into question—pre-induc-

tion review should be permitted. And where, as here, a registrant makes a claim not suited for administrative determination even in the first instance, pre-induction judicial review would not duplicate the administrative process and therefore should be permitted. Of course, where the correctness of a particular classification is at issue, the administrative process usually has an opportunity to decide whether the claimed error exists, and pre-induction review would be inappropriate. But a Selective Service Board of laymen does not have the competence to decide Dr. Fein's claim that generally applied Selective Service procedures are unconstitutional. Without pre-induction judicial review, Dr. Fein's liberty is taken without *any* competent body deciding the constitutional question he raises. Cf. *Oestereich* v. *Selective Service Board, supra,* at 243 (Harlan, J., concurring in result). Section 10 (b)(3) does not require such a harsh result, at odds with the spirit, if not the letter, of so many of our constitutional decisions.

I would permit pre-induction review in this case, and would remand for consideration of the merits of petitioner's claims.