**Andrew ROWLAND, a minor by his guardian Lewis Rowland, et al.**

**v.**

**Curtis TARR, National Director of Selective Service, et al.**

**Civ. A. No. 71–1480.**

United States District Court,
E. D. Pennsylvania.

July 1, 1974.

See also, 3 Cir., 480 F.2d 545.

Harold E. Kohn, Donald L. Weinberg, Philadelphia, Pa., for plaintiffs.

Robert E. J. Curran, U. S. Atty., Thomas E. Mellon, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendants.

Before ROSENN, Circuit Judge, LORD, Chief District Judge, and GORBEY, District Judge.

## OPINION

GORBEY, District Judge.

Plaintiffs in this action are attacking the constitutionality of the Military Selective Service Act (50 U.S.C. App. § 460 et seq.). Plaintiffs filed a five count complaint which was dismissed on April 27, 1972. On June 5, 1973, the Court of Appeals reversed that decision as to count III only, and affirmed it as to all other counts. Defendants then filed a motion to dismiss count III. The district court, having determined pursuant to the mandate of the Court of Appeals, that the plaintiffs had standing to bring this action, and that the issue raised did not present an insubstantial federal question, requested the Chief Judge of the Circuit Court of Appeals to convene this three-judge court which must first decide defendants' motion to dismiss.

Count III of the complaint in essence alleges that the Military Selective Service Act is unconstitutional in that it authorizes and contemplates the conscription of only males, and therefore is a violation of the due process of law and the equal protection of laws as comprehended within the Fifth Amendment.

■ In support of their motion to dismiss, the defendants first argue that the action is now moot. On July 30, 1973, the power of the Selective Service System to induct registrants pursuant to the Act lapsed. Therefore the defendants argue that since the plaintiffs cannot be inducted, the action is moot and should be dismissed. For this court to have jurisdiction there must be an actual case or controversy. North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); see also Difunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). We cannot issue an advisory opinion. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688 (1936).

■■ Plaintiffs[1] maintain that under the Act the named plaintiffs are still subject to certain affirmative duties, and that they can and will be prosecuted if they fail to meet those obligations.[2] In addition, under the very Act which allowed the authority to induct to expire, the defendants still have the power to induct certain registrants who had obtained a deferment.[3] Deferred registrants can still be inducted after July 1, 1973, when such deferment ceases to exist. Defendants argue that because plaintiffs are no longer subject to induction, the action is moot. They ignore the fact that under the Act any of the named plaintiffs may still undergo prosecution and severe criminal penalties for

---

1. There are four named plaintiffs seeking to represent the class of all present and prospective registrants. At the time the complaint was filed, one plaintiff, Andrew Rowland, was 18 and had registered for the draft. The other three named plaintiffs, David Freudberg, David Sitman and Steven Rowland were under 18 and had not yet registered for the draft. The current status of each of these plaintiffs is unknown. Plaintiffs' counsel was unable to inform us whether or not Andrew Rowland was in the class of persons who having had a deferment was still subject to induction at the expiration of that deferment, and whether or not the other named plaintiffs had in fact registered for the draft.

2. The Act imposes criminal penalties of up to five years imprisonment and/or a fine of up to ten thousand dollars for failure to perform any duty under the Act or regulations promulgated thereunder. These include registering for the draft, carrying of draft cards, reporting any intention to leave the country to their local board, keeping their local board informed of a current mailing address and submitting to classification and processing, including appearing for a medical examination.

3. Section 17(c) of the Act, 50 U.S.C. App. § 467(c) provides:
   "Notwithstanding any other provision of this title [§§ 451, 453, 454, 455, 456 and 458–471 of this Appendix], no person shall be inducted for training and service in the Armed Forces after July 1, 1973, *except persons now or hereafter deferred under § 6 of this title [§ 456 of this Appendix] after the basis for such deferment ceases to exist.*" [Emphasis added.]

failure to perform certain affirmative duties. The threat of prosecution is real.[4] This is not the situation where a statute has laid dormant and unenforced.[5] There is a real and current threat to them and is by no means moot. In addition, there are potential class members who may still be inducted under current authority.[6] Thus there is an actual case or controversy over which this court may exercise jurisdiction.

Plaintiffs argue that if this court does not have jurisdiction over the present claim, the registrants who object to performing such duties must defy the requirements of the Act and await criminal prosecution before they can challenge what they believe to be an unconstitutional statute.[7] In essence this argument goes to the propriety of issuing a declaratory judgment at this time. In such a situation, the courts have said that the granting of declaratory judgment is discretionary and should not be entered into if it will not settle an actual controversy between the parties. Tennessee Coal, Iron and R. Co. v. Muscoda Local No. 123, etc. et al., 5 Cir., 137 F.2d 176, aff'd, 321 U.S. 590, 64 S. Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014, rehearing denied, 322 U.S. 771, 64 S.Ct. 1257, 88 L.Ed. 1596.

The principal criteria guiding policy in favor of rendering declaratory judgments are: (1) when judgments will serve useful purposes in clarifying and settling legal relations in issue, and (2) when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to proceeding. McGraw-Edison Co. v. Preformed Line Products Co., 9 Cir., 362 F.2d 339, cert. denied, 385 U.S. 919, 87 S.Ct. 229, 17 L. Ed.2d 143 (1967).

In the case at bar there is an actual dispute between the parties. The plaintiffs maintain that they should not be required to perform the duties mandated by the Act, for they claim the Act is unconstitutional. We hold that being required to perform such affirmative duties under the threat of criminal prosecution constitutes an actual controversy for which the exercise of our discretion is proper. See City of Altus, Oklahoma et al. v. Carr, 225 F.Supp. 828 (W.D. Tex.1966), aff'd, 385 U.S. 35, 87 S.Ct. 240, 17 L.Ed.2d 34; Jeannette Rankin Brigade et al. v. Chief of Capitol Police, 342 F.Supp. 575 (D.C.1972), aff'd, 409 U.S. 972, 93 S.Ct. 311, 34 L.Ed.2d 236.

The operation of the Declaratory Judgment Act[8] is procedural only and although enlarging the range of available remedies, it does not extend the jurisdiction of the federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Ragoni v. United States, 424 F.2d 261 (3d Cir. 1970). Thus jurisdiction in this case must be founded on 28 U.S.C. § 1331.[9] This requires that

---

4. This court takes judicial notice of the frequency of Selective Service prosecutions which have come before us in recent years.

5. *See e. g.*, Planned Parenthood Assn. v. Nelson, 327 F.Supp. 1290 (D.C.Ariz.1971); Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L. Ed.2d 989 (1961).

6. It is unknown whether any of the named plaintiffs would fall into this category. Again, as to those persons, the threat of induction is clearly not moot. Their status as members of the class plaintiffs seek to represent must be considered until it is determined that the action is not appropriate for class action treatment. Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970).

7. The only other method of attack under the Act would be to await induction and bring a

Habeas Corpus action. However, except for a limited group of registrants, there can be no current inductions, thus no statutory remedy. However, even the existence of other relief is not a *per se* bar to declaratory relief. Powell v. McCormack, 395 U.S. 486, 517, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491 (1969).

8. 28 U.S.C. § 2201.

9. 28 U.S.C. § 1331 reads as follows:
"§ 1331. *Federal question; amount in controversy, costs*
(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

the amount in controversy exceed $10,000.

In support of their motion, defendants cite Boyd v. Clark, 287 F.Supp. 561 (S.D.N.Y.1968) where the court held as an alternative basis for dismissing the complaint that the plaintiffs did not meet the $10,000 jurisdictional requirements of § 1331. In that case the injury claimed was the increased likelihood of induction because registrants who receive student deferments ordinarily could postpone their induction for several years and may escape service entirely. Thus making it more likely that the plaintiffs who did not receive student deferments would be inducted. In that case, the Court states that: "Plaintiffs' counsel concedes that they cannot prove that any of the plaintiffs will suffer a monetary loss of more than $10,000 by reason of the alleged injury." In the case at bar we have an entirely different situation. There is no such concession by plaintiffs' counsel; in fact, they allege very strenuously that the potential criminal penalties for failure to meet the affirmative duties under the Act would alone satisfy the jurisdictional requirement of § 1331. The other cases which defendants cite us to are those which stand for the proposition that a claim which cannot be measured in dollars and cents fails to meet the amount in controversy requirement of § 1331. In the case at bar the potential criminal liability clearly exceeds the jurisdictional requirement of § 1331. Also, in the case of those registrants who are still subject to induction, we must accept the plaintiffs' good faith allegation that two years of their life spent in the military service is worth more than $10,000. Tooahnippah v. Hickel, 397 U.S. 598, 90 S.Ct. 1316 n. 8, 25 L.Ed.2d 600 (1970).

The defendants also argue that the complaint should be dismissed because the court lacks subject matter jurisdiction. They argue that the Act precludes pre-induction judicial review of the plaintiffs' status. Section 10(b)(3) of the Act (50 U.S.C. App. § 460(b)(3)) provides in pertinent part as follows:

". . . No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [§ 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

Defendant argues that this provision prevents this court from exercising jurisdiction over the plaintiffs' complaint.

The intent of this section was to prevent pre-induction judicial review of the classification and processing of registrants. However, as Justice Douglas stated in Oestereich v. Selective Service System Local Board No. 11, Cheyenne, Wyo. et al., 393 U.S. 233, 238, 89 S.Ct. 414, 416, 21 L.Ed.2d 402 (1968):

"In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either

---

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs to the plaintiff." As amended July 25, 1958, Pub.L. 85–554, § 1, 72 Stat. 415.

be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. . . . Our construction leaves § 10(b)(3) unimpaired in the normal operations of the Act."

*See also* Breen v. Local Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970).

In the Oestereich case the plaintiff was a divinity student who was entitled, pursuant to § 6(g) of the Act to an exemption from training in service under the Act. Plaintiff returned his registration certificate to the government as a protest, "for the sole purpose of expressing dissent from the participation by the United States in the war in Viet Nam." Shortly thereafter, his board declared him delinquent for failure to have the registration certificate in his possession and for failure to provide the board with notice of his local status. The board thereupon changed his classification to I–A. Plaintiff took an administrative appeal and lost and was ordered to report for induction. The suit was brought to restrain that induction. The Supreme Court in the opinion by Justice Douglas held that § 10(b)(3) of the Act cannot bar judicial review of such "basically lawless" conduct.

▮ In the case at bar plaintiffs are not objecting to any action by the local board, "basically lawless" or otherwise, they are attacking the requirements of the statute itself, claiming that it is unconstitutional. If there can be exception to the specific language of the Act, surely an action such as this which attacks the constitutionality of the Act itself cannot be barred as a pre-induction judicial review of classification or processing. In the case of Boyd v. Clark, *supra*, upon which defendants rely heavily, a three-judge court dismissed the action which was brought by four selective service registrants challenging the constitutionality of the student deferments provided in § 6(h)(1) of the Military

Selective Service Act of 1967 (16 U.S.C. App. § 456(h)(1)). Plaintiffs in Boyd argued that student deferments: (1) discriminated against persons who are economically unable to attend college, and (2) are arbitrary and bear no reasonable relationship to the purposes of the Act. Plaintiffs in that case, who were all classified I–A, alleged that they were unable to secure student deferments solely because they lacked the financial means to attend college. The injury claimed was an increased likelihood of induction because registrants who were deferred as students could postpone their induction for several years and in many cases escape service entirely by acquiring other deferments. None of the plaintiffs in the Boyd case was under orders for induction. The court held that since plaintiffs may never be required to report for induction, their claim is premature and was not then ripe for adjudication. In making that decision, the court stated in quoting from Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 at 823 (2d Cir. 1967):

"In the usual run of Selective Service cases, the registrant must wait until he receives an induction order, and has either obeyed it or is prosecuted for refusing to obey it, before the courts may review his classification. This is so because, in nearly all cases, it is service in the armed forces itself, and not the mere classification, that constitutes the alleged injury. Thus, should it develop that for independent reasons such as physical disability the registrant is not actually wanted by the armed forces, he will never have sustained a legally redressible injury. Perhaps it is true that a mere adverse classification will cause a disarray of plans and emotional upset but this is an acceptable price to pay for the efficient functioning of the Selective Service . . . ."

In the case at bar we have a different situation than that existent in the Boyd case. Here plaintiffs are attacking the constitutionality of the Military Selec-

tive Service Act itself, and not just the constitutionality of their classification pursuant to that Act. Pre-induction attacks on classification are what was sought to be prevented by § 10(b)(3). Here the injury alleged is the requirement of affirmative duties under the threat of prosecution for failure to perform those duties.

In discussing the scope of § 10(b)(3) in Fein v. Selective Service Sys. Loc. Bd. No. 7, Yonkers, N.Y., 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), the Supreme Court, in distinguishing the Oestereich and Breen cases, stated:

"§ 10(b)(3) does foreclose pre-induction judicial review in the more common situation where the board, authoritatively, has used its discretion and judgment in determining facts and in arriving at a classification for the registrant."

In the case at bar there is no discretion, no judgment, and no facts being challenged. There is "objective certainty" of the status of the plaintiffs. *See* Fein v. Selective Service Sys. Loc. Bd. No. 7, Yonkers, N.Y., *supra*. Accordingly, we hold that § 10(b)(3) of the Act does not bar this action. Thus, defendants' motion to dismiss is denied.

ROSENN, Circuit Judge, dissents and will file a dissenting opinion.

ROSENN, Circuit Judge (dissenting).

I dissent because I believe that the plaintiffs' pre-induction constitutional attack upon the Military Selective Service Act is interdicted by the provisions of the Act itself. In my opinion, Boyd v. Clark, 287 F.Supp. 561 (S.D.N.Y. 1968), aff'd, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969), and Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), re-quire that we hold this action barred by § 10(b)(3) of the Act.

The majority opinion states that "[t]he intent of [§ 10(b)(3)] was to prevent pre-induction judicial review of the classification and processing of registrants." The majority would, nevertheless, make an "exception to the specific language of the Act" in "an action such as this which attacks the constitutionality of the Act itself. . . ."

In *Boyd*, several registrants brought a pre-induction challenge to the constitutionality of the *statutory* provision granting student deferments. They contended, inter alia, that the deferment discriminated against those financially unable to attend college. Aside from their constitutional challenge to the deferment for which they were themselves concededly ineligible, the plaintiffs "did not otherwise contest their own I–A classifications." [1]

The three-judge district court held that the action for declaratory and injunctive relief was barred because the challenge could only be made either as a defense in a criminal prosecution for refusing induction or by a habeas corpus action after accepting induction.[2] The Supreme Court summarily affirmed.

The plaintiffs in the instant case contend, in effect, that the Act unconstitutionally subjects males but not females to the draft, and that therefore males suffer an increased likelihood of being drafted because there are consequently fewer registrants in the draft-eligible pool. I see no significant difference between this case and *Boyd*. In both cases, a class of registrants eligible for induction under the Act challenges its constitutionality because another class of young persons is made ineligible for induction. They contend that the distinction between the two classes violates

---

1. *Fein, supra*, 405 U.S. at 374, 92 S.Ct. at 1069.

2. The court relied not on § 10(b)(3) itself, but rather on case law which had developed prior to the enactment of § 10(b)(3). In *Fein, supra*, however, the Supreme Court

treated *Boyd* as a case decided under § 10(b)(3). *See* 405 U.S. at 364, 92 S.Ct. 1062. The distinction is not significant; regardless of the theory upon which *Boyd* was decided, the Court in *Fein* expressly approved of the *Boyd* holding.

equal protection and unconstitutionally increases the likelihood that the plaintiffs themselves will be inducted. I therefore believe that the present action is barred by *Boyd*.[3]

The majority relies on the fact that in the instant case, "there is no discretion, no judgment, and no facts being challenged." Precisely the same situation, however, existed in the *Boyd* challenge to the constitutionality of student deferments. That challenge was not allowed, and the majority in this case gives no basis for distinguishing *Boyd* in this regard.[4]

It might be argued that the purpose of § 10(b)(3) was to prevent delay in the operation of the Selective Service System, and that the present constitutional challenge to the Act should be allowed on the ground that it does not present opportunity for delay. This rationale, however, appears to have been decisively rejected by the Supreme Court. In *Fein, supra,* a registrant brought a pre-induction suit for declaratory and injunctive relief, claiming that

the procedure by which his conscientious objector claim had been denied was an unconstitutional violation of his due process rights. The Court, in holding the action barred by § 10(b)(3), recognized that Mr. Justice Harlan

> would have allowed pre-induction judicial review of a procedural challenge on constitutional grounds if it presented no "opportunity for protracted delay" in the system's operations, and if the issue was beyond the competence of the board to hear and determine.

405 U.S. at 375, 92 S.Ct. at 1070. Rejecting these criteria as the standards under which the applicability of § 10(b)(3) would be decided, the Court pointedly stated that "[t]his view . . . commanded the vote of no other member of the Court." *Id.* Whether or not the instant case presents opportunity for delay is irrelevant, therefore, and the action is barred by § 10(b)(3) for reasons stated above.

I would therefore dismiss the instant action for lack of jurisdiction.

3. I would not consider dispositive the distinction that *Boyd* involved the constitutionality of a statutory *deferment,* while the instant case involves the constitutionality of the exclusion of a group (females) initially from the scope of the Act. The case sub judice would be more analogous to *Boyd* if the Act required all females to register for the draft, but also granted deferments to all females by virtue of their gender. I find nothing in *Boyd, Fein,* or in the majority opinion in this case that is dependent upon a distinction between challenges to deferments and challenges to exclusions. The sole question in both situations is whether Congress may, consistent with equal protection requirements, subject to the draft only one of two statutorily defined groups.

4. The majority quotes language from *Fein* which indicates that § 10(b)(3) bars pre-induction judicial review "where the board, authoritatively, has used its discretion and judgment in determining facts and in arriving at a classification for the registrant." The Court did not, however, by this language indicate that it was thus defining the *only* kind of suit that was barred by § 10(b)(3). In fact, the holding of *Boyd,* as well as the rejection in *Fein* of Mr. Justice

Harlan's position that constitutional challenges should be permitted, discussed *infra,* indicate that the § 10(b)(3) exclusion is broader than that suggested solely by the quoted language.

Moreover, the quoted language was used by the Court only to contrast that "more common situation" with the "rather rare" situation where "administrative action, based on reasons unrelated to the merits of the claim to exemption or deferment, deprives the registrant of the classification to which, otherwise and concededly, he is entitled by statute." 405 U.S. at 374–375, 92 S.Ct. at 1069. This latter situation is clearly not involved in the instant case, as the majority concedes, since the male plaintiffs are not claiming the right to a statutory classification. The Supreme Court, therefore, not faced with the instant case, described one kind of action barred by § 10(b)(3) and one kind of action not barred by § 10(b)(3). The facts of the instant case fall into neither category. One cannot conclude, as the majority does, that the present action is permitted simply because it falls outside the category that the Supreme Court stated is barred. Further analysis, which I have attempted, is required for this "middle" area.