Dick **RHEINGANS,** Plaintiff,

v.

**Ramsey CLARK et al., Defendants.**

**No. 50181.**

United States District Court,
N. D. California.

Nov. 18, 1968.

John Thorne, San Jose, Cal., for plaintiff.

Asst. U. S. Atty. Jerry K. Cimmet, San Francisco, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

Plaintiff filed this action for a preliminary injunction enjoining the defendants from ordering him to report for civilian work as a conscientious objector. He contends his local Selective Service Board erred in refusing to reopen and consider his classification and alleges that he is entitled to deferment for hardship to or dependency of his parents in a III-A classification rather than his current I-O.

The defendants contend this court lacks jurisdiction over this matter and further claim the local board acted properly in refusing to reopen the plaintiff's classification. For the reasons stated below, this court finds neither contention of the defendants persuasive and hence orders the preliminary injunction be issued.

Initially, the defendants argue that 50 U.S.C. App. § 460(b) (3) bars any civil action to enjoin the ordering of a selective service registrant for civilian work. Though many cases have held that 50 U.S.C. App. § 460(b) (3) precludes any judicial review by way of civil actions (see defendants' memorandum of points and authorities), this court finds the reasoning of Judge Alfonso J. Zirpoli in Petersen v. Clark, 285 F.Supp. 700 (N.D. Cal. 1968) persuasive. In *Petersen*, Judge Zirpoli ruled that the restriction on review of § 460(b) (3) was a denial of due process under the Fifth Amendment and, therefore, unconstitutional. Chief Judge George B. Harris followed the *Petersen* rationale in Gabriel v. Clark, 287 F.Supp. 369 (N.D. Cal. 1968), appeal filed 37 L.W. 3104 (1968).

In adopting the *Petersen* approach, this court need not recite the reasoning

and precedent analyzed with thoroughness by Judge Zirpoli. The facts of the *Petersen* case are substantially similar to those in the instant case to warrant the application of the *Petersen* rationale. The plaintiff in *Petersen* sought pre-criminal and pre-compliance judicial review of his local board's order for induction. Among his contentions, he alleged the local board had arbitrarily refused to reopen his classification.

The plaintiffs in both *Petersen* and the present matter faced a precarious dilemma under the existing Congressional scheme stated in § 460(b) (3). Only two alternatives existed to challenge via judicial review the validity of a Selective Service Board's actions concerning classification and attendant procedures. The registrant could either comply with the allegedly invalid order, subsequently seeking judicial review through a writ of habeas corpus. Or, alternatively, he could risk imprisonment by ignoring the induction order and raising the issue of its validity as a defense to a criminal prosecution.

■ Though some governmental interests may support the continuance of this Hobson's choice (see Petersen v. Clark, 285 F.Supp. 700, 711–712 (N.D. Cal. 1968)), accepted notions of due process cannot be harmonized with conditioning judicial review on complying with an invalid order or risking a criminal penalty. When weighed against the potential and substantial restraints upon an individual's liberty, these governmental interests do not justify the limited avenues of judicial review open to the registrant by § 460(b) (3). Accordingly, this court agrees with the holding in *Petersen* that § 460(b) (3) is unconstitutional in denying due process to registrants wishing to challenge the validity of induction or work orders.

The defendants next contend this court lacks jurisdiction under 28 U.S.C. § 1331, since the matter in controversy does not exceed the sum or value of $10,000. Yet,

in determining whether a substantial claim exists for an amount which satisfies the statute, this court will look not only to the pleadings but to any submitted affidavits or evidence in the court record. In his declaration submitted November 8, 1968, the plaintiff states he currently earns "between $800.00 and $900.00 per month as salary, which monies are used to support both my parents and myself." He further alleges on information and belief that his salary in the civilian work ordered by the Selective Service System would be approximately $315.00 per month. (This figure exceeds the salary approximation stated by the Chief of the Registration and Conscientious Objector Section, California Headquarters, Selective Service System (p. 69 of plaintiff's selective service file)). These salary figures are in accord with the plaintiff's testimony before this court on November 8, 1968.

Therefore, during the 24-month period of civilian work as a conscientious objector, the plaintiff would earn approximately $7,560. If he continued in his current employment, he would earn approximately between $19,200–$21,600 during the 24 months. Since the difference between these two salaries exceeds $10,000, the plaintiff has satisfied the monetary jurisdictional requirements of 28 U.S.C. § 1331.

The defendants next contend that the plaintiff failed to present a prima facie case for re-opening and re-classification as a III-A. Thus, the defendants allege, the local Selective Service Board properly exercised its discretion in refusing to reopen the plaintiff's classification.

The relevant regulation, 32 C.F.R. § 1625.2, provides that a "local board may reopen and consider anew the classification of a registrant * * * [if presented with] facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification * * *." In interpreting this regulation, the courts, including the Ninth Circuit, have framed the following approach: when a prima facie case for reclassification is presented, the local board is required to re-open the record to determine whether the registrant is entitled to the change requested. Miller v. United States, 388 F.2d 973 (9th Cir. 1967); Stain v. United States, 235 F.2d 339 (9th Cir. 1956).

Thus, the issue before this court is whether the defendant presented to the Selective Service Board a prima facie case for a III-A dependency or hardship classification; the merits of the claim for a change in classification are not here involved. A prima facie case arises when offered facts, if true and uncontradicted, would be sufficient under the regulation to warrant granting the requested classification. Miller v. United States, 388 F.2d 973, 975 (9th Cir. 1967). When such facts are not frivolous and present a prima facie case, then the board's refusal to reopen the case constitutes a denial of procedural due process. Stain v. United States, 235 F.2d 339, 343 (9th Cir. 1956). Since a reopening gives the registrant rights to a personal interview and administrative appeals under 32 C.F.R. §§ 1625.11–1625.14, refusing to reopen forecloses the registrant from exercising these rights.

In the instant matter, plaintiff contends he has presented a prima facie case to his local board for re-classification as a III-A. The requirements for a III-A classification are set forth in 32 C.F.R. § 1622.30(b), which provides:

In Class III-A shall be placed any registrant whose induction into the armed services would result in extreme hardship (1) to his * * * parent * * * [or] sister who is dependent upon him for support * * *.

To establish a prima facie case under this regulation, the registrant must present evidence not only of substantial financial contributions made by him to a dependent listed in the regulation, but also of the extreme hardship that dependent would suffer if deprived of the support. The plaintiff here, in

his first request for a reopening of his classification on May 28, 1967, stated that since his I-O classification on November 8, 1965, his father—who had planned on receiving a pension from a carpenter's union—could not get the pension due to an insufficient number of hours worked and that his father's health problems foreclosed any possibility of working. Selective Service File, p. 76. His statement also indicated that his parents received only social security payments and hence would be unable to live without his support, which he stated amounted to $100 per month for rent, $150 for expenses, and payment of his parents' $500 annual property tax. The evidence offered—which included a statement of his father and letters from his parents' doctors—also indicated that the income provided by the registrant could not readily be replaced. Since his mother could also not work due to health problems, since his unmarried sister was not working, since his married brother and three married sisters could not help monetarily because they were supporting their own families, and since the parents' income was limited to social security payments, it appeared the parents would incur an extreme hardship if deprived of the plaintiff's support. *Id.* at 76–78.

Subsequent requests by the plaintiff to reopen his classification disclosed additional facts indicating his contributions and the hardship upon his parents if deprived of such contributions. In a letter on August 2, 1967, the plaintiff repeated the facts of his parents' incapacity to work and stated that the only payments to his parents aside from his contributions were his father's $90 monthly social security payments. Selective Service File, pp. 84–85. He further stated that without his support, his parents would be forced to sell their house. *Id.* at 85.

In a further request to reopen on September 30, 1967, the plaintiff presented an affidavit from his parents stating their dependency upon him and additional letters from their doctors indicating their respective incapacity to work. *Id.* at 115–118. In their affidavit, the parents listed their minimum yearly expenses as $4,185.56. The social security payments contributed $1,080 toward these expenses, while the parents stated the plaintiff's "minimum contribution" was $3,105.56. *Id.* at 116.

The plaintiff's final request to reopen his classification was made in a letter on November 10, 1967. There, he repeated his prior statements that since his I-O classification in 1965, his parents—plus a sister and her son— had "become totally dependent upon me for their support." *Id.* at 125.

The alleged facts and statements presented in the plaintiff's first request to reopen on May 28, 1967, appear to be of enough substance to establish a prima facie case of change in status. Yet, even if the information in the first request be considered incomplete, the alleged facts and statements presented in the subsequent three requests to reopen—when taken together with the first request—clearly established a prima facie case, requiring the selective service board to reopen the plaintiff's case to determine whether his new status required reclassification. See Stain v. United States, 235 F.2d 339, 342 (9th Cir. 1956). The plaintiff's selective service file includes no basis in fact for the board's refusal to reopen plaintiff's classification. Furthermore, the file contains no facts or statements to contradict the statements made by the plaintiff in support of his request to reopen.

Therefore, though upon reopening the selective service board may have justification to deny plaintiff reclassification upon the merits, the plaintiff's due process rights were denied by the board's refusal to reopen after a prima facie case was presented. Accordingly, this court orders that a preliminary injunction be issued enjoining the defendants from enforcing an order issued on October 10, 1968, to have the plaintiff report for civilian work. The defendants are

further enjoined from issuing to the plaintiff any order directing him to report for civilian work until the local selective service board, consistent with this opinion, reopens and considers plaintiff's request for a reclassification of status.