**UNITED STATES of America**

v.

**James Anthony YEOUZE.**

**Crim. A. No. 7114.**

United States District Court,
D. New Hampshire.

Jan. 6, 1972.

William B. Cullimore, Asst. U. S. Atty., Concord, N. H., for plaintiff.

Edward Rudnitsky, Field, Rudnitsky & Mullane, Boston, Mass., Arthur W. Perkins, Perkins & Dowst, Concord, N. H., for defendant.

### OPINION

BOWNES, District Judge.

This is a unique Selective Service case. The defendant was indicted for unlawfully, knowingly, and wilfully leaving civilian employment prior to the expiration of the twenty-four consecutive months of service ordered by the local draft board. It is the defendant's basic position that he is not guilty of leaving his employment as charged in the indictment because he had never entered such employment pursuant to the local draft board's order. This position is consistent with the defendant's faith as a member of Jehovah's Witnesses, specifically, that he could not, consistent with the tenets of his religion, obey an order of the Government to engage in work contributing to the maintenance of the national health, safety, or interest. It is the Government's contention that the defendant "volunteered" for civilian work pursuant to the rules and regulations of the Selective Service System and that his term of enlistment was for twenty-four consecutive months.

Prior to the jury waived trial, the parties stipulated to the following facts: that the defendant was duly registered by the Selective Service System on April

4, 1967; that the defendant was classified I–O, conscientious objector, on May 12, 1969, by his local draft board; that on September 18, 1969, the defendant was ordered to report for civilian work at the New Hampshire [State] Hospital for a period of two years with a reporting date of September 29, 1969; and that this order was not made in the regular order of call of registrants being called for induction into the Armed Services; and that the defendant reported for work at the New Hampshire [State] Hospital as ordered, but left this employment without authority on August 7, 1970.

## FINDINGS OF FACT

The Manager of the Administrative Division of Selective Service for the State of New Hampshire, Captain Agrafiotis, whose testimony I accept, explained that a I–O registrant is given the opportunity, subject to the approval of the local board, of finding his own work prior to the time that the local board actually orders such a registrant to work. If a I–O registrant goes to work prior to the order date, he is given credit for that time in computing the term of such employment. The Captain further testified that I–O registrants and I–A registrants are treated in the same manner procedurely as to order of call, physical examination, and order to report either for work or induction. He also testified that the defendant would have been ordered to work shortly after the actual order issued if there had been no error in the order of call.

Early in July the defendant had a conversation with the clerk of the local draft board who informed him that he would be ordered to report for civilian work in September, but that conscientious objectors were given an opportunity to find their own jobs, and the clerk suggested that this would be a good idea for him to follow. The defendant, therefore, went to work at the New Hampshire Hospital on July 14, 1969. On August 14th he filled out SSS Form 152, Special Report for Class I–O Registrants, informing his local draft board where and when he had gone to work.

It is undisputed that the defendant never filed with the local board an "Application of Volunteer for Civilian Work" (SSS Form 151).

Sometime in the summer of 1969, the defendant discussed his situation with one of the elders of his church who, at first, indicated that the defendant's actions might be contrary to the dogma of his religious faith but, after reflection, the elder decided, and so informed the defendant, that his course of action was consistent with the tenets of his faith because he did not go to work at the New Hampshire Hospital as a result of any Government order.

On September 17, 1969, the local board held a telephone meeting and voted 3 to 0 that the New Hampshire Hospital was acceptable as a place for the registrant to complete his twenty-four months of civilian work. On September 18, 1969, the local board mailed to the defendant SSS Form 153 entitled "Order to Report for Civilian Work and Statement of Employer." This document stated:

Having been found to be acceptable for civilian work contributing to the maintenance of the national health, safety, or interest you have been assigned to Psychiatric Attendant located at New Hampshire State Hospital.

It also ordered him to report to the local board on September 29, 1969, for instructions to proceed to the place of employment. Accompanying this form, however, was a letter to the defendant stating that, due to the fact that he was employed by the New Hampshire Hospital and had been so employed since July 14, 1969, it was not necessary for him to report to the local board as ordered on SSS Form 153. The defendant never discussed the order of September 18, 1969, with any of the elders of his church.

Sometime between November of 1969 and July of 1970, the defendant requested of Major Davis, then Manpower Offi-

cer for the Selective Service System for the State of New Hampshire, that he be given a ministerial classification. Major Davis quite properly informed the defendant that in order to obtain such a classification, he would have to go through the Appeals Board in Washington. The defendant then discussed the situation with the elders of his church who decided that he was, in fact, working because of a Government order, and that the tenets of his faith required that he stop working immediately. The defendant, therefore, quit his job at the Hospital on August 7, 1970. While there is some evidence that the defendant's religious faith was not the sole reason for his quitting, I assume for purposes of this opinion that he did quit because of his religious convictions. At the time that the defendant went to work at the Hospital, he was not eligible for a ministerial classification and did not attain the status of "pioneer," which is the Jehovah's Witnesses equivalent of an ordained minister, until November of 1970.

## RULINGS

32 C.F.R. § 1660.10 provides:

Any registrant who is between the ages of 18 and 26 and who has been classified in class I–O, or who claims eligibility for classification in Class I–O, may volunteer at his local board for civilian work contributing to the maintenance of the national health, safety, or interest in lieu of induction. The local board shall promptly classify any such volunteer who claims eligibility for Class I–O. Each such volunteer who is in Class I–O and who has been found qualified for service in the Armed Forces after his armed forces physical examination shall be processed in the same manner as a volunteer for induction except that, in lieu of induction, he shall be ordered by the local board to perform civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1.

While the Government has posed the issue in terms of whether the defendant "volunteered" for civilian work or not, it is the facts not semantics, that define the rights and obligations of the defendant. Technically speaking, the defendant never "volunteered," if we define volunteer only in the terms of filling out SSS Form 151. Leaving semantics aside, it is clear that the defendant went to work at the New Hampshire Hospital because he had been informed by the clerk of the local board that in September of 1969 he was going to be ordered to civilian work. The order issued after the defendant took advantage of the opportunity given him by his local board to select his own employment. The fact that the board "met" by telephone to approve such selection did not deprive the defendant of any rights or prejudice him in any way. It merely confirmed his own choice. Even though such a meeting may not have complied with the literal requirements of the Act, it is not fatal.

A more difficult problem is posed by the stipulated fact that the "Order to Report for Civilian Work" was not in the regular order of call of registrants being called for induction into the Armed Services. A failure to follow the correct order of call may vitiate an induction order. United States v. Smith, 291 F.Supp. 63 (D.C.N.H. 1968), United States v. Lybrand, 279 F. Supp. 74 (E.D.N.Y.1967). This is so because the order of call usually determines the date of induction. That is not true in this case, however, because the order of call came after the defendant had started civilian employment. The defendant would have been ordered to work shortly after the actual order if the proper order of call had been followed. The salient fact is not the date of the order, but that the defendant went to work in July because he had been told by the clerk of the board that he would be ordered to report for civilian work sometime in September. The defendant's contention that he did not enter his hospital employment because of

the order of September 18th is correct. But it is also true that he would not have gone to work at the Hospital at all unless he had been notified that he would be ordered to report for civilian work in September. The fact that the order was not issued pursuant to the regular order of call is immaterial. By going to work when he did, the defendant waived his procedural right to be called in proper order. He accepted his I–O classification and he, himself, accelerated his order of call to July 14th. He was a "volunteer" as to time and place of employment, but the type and tenure of his work had been determined by the board in accord with the Selective Service law. To hold that the defendant is free to determine how long he will work in a civilian capacity would not only flout common sense as far as the law is concerned, but would make a mockery of other members of the defendant's faith who have faced squarely the decision of whether or not they were going to obey the draft board.

The defendant is found guilty as charged.

So ordered.