**Thomas Edward PIERCY et al., Plaintiffs,**

v.

**Dr. Curtis W. TARR, National Director, Selective Service System, et al., Defendants.**

**Lawrence Remley LEVI et al., Plaintiffs,**

v.

**Dr. Curtis W. TARR, National Director, Selective Service System, et al., Defendants.**

**Nos. C–72 448, C–72 458.**

United States District Court,
N. D. California.

June 1, 1972.

Hollywood, Cal., Jerry E. Berg, Collins, Hays, Stewart, Berg, Pott & Sanford, San Jose, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., John F. Cooney, Jr., Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

ZIRPOLI, District Judge.

Plaintiffs are selective service registrants classified as conscientious objectors (I–O) by the Selective Service System. The thrust of their complaint is twofold: First, plaintiffs complain that they are being ordered to report for alternate civilian employment, at a time when comparable registrants classified I–A and I–A–O are not being ordered to report for induction, in violation of Section 6(j) of the Military Selective Service Act and the regulations adopted pursuant thereto. Second, the plaintiffs attack the promulgation of those informal directives which purport to validate the issuance of civilian work orders as contrary to the mandatory publication requirements of Section 13(b) of the Act and the implementing executive order. On March 15, 1972, the court issued a temporary restraining order enjoining the defendants, Curtis Tarr, National Director of the Selective Service System, and Carlos Ogden, State Director of California, from enforcing any civilian work orders issued to plaintiffs herein or the class they purported to represent pending determination of these issues.

### *Jurisdiction*

Before proceeding to the merits of plaintiffs' claim, the court must determine whether it has jurisdiction over the subject matter of this action. Section 10(b)(3) of the Act, 50 U.S.C.App. § 460(b)(3), provides in pertinent part:

> "No judicial review shall be made of the classification or processing of any registrant . . . except as a defense to a criminal prosecution . . . after the registrant has responded either affirmatively or negatively to an order to report for induction, or for

Scott J. Tepper, San Francisco, Cal., Martha Goldin, Saltzman & Goldin,

civilian work in the case of a registrant determined to be opposed to participation in war in any form."

Notwithstanding this apparent statutory bar to all preinduction judicial review, in several recent cases the Supreme Court has interpreted Section 10(b) (3) not always to preclude such review. Although both plaintiffs and defendants rely on language extracted from those cases in support of their respective positions on the jurisdictional question, in the court's view, the issues this case raises fall within the ambit of the "exception" to Section 10(b) (3) which the Supreme Court has created in the cases discussed below.

■ What has emerged from those cases is a recognition of the propriety of pre-induction judicial review where there is no exercise of discretion by a local board in evaluating evidence and in resolving issues of fact, but rather simply a question of law. In Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 238, 89 S.Ct. 414, 416, 21 L.Ed.2d 402 (1968), the Supreme Court interpreted Section 10(b) (3) to permit pre-induction judicial review where it was clear that the use of delinquency regulations to deprive a registrant of a statutory exemption was "blatantly lawless." The Court thus implicitly approved pre-induction judicial review whenever there was "a clear departure by the Board from its statutory mandate." At least one question about the scope of this exception to Section 10(b) (3) was promptly resolved by Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), decided the same day. In that case, the registrant sought to challenge his local board's denial of his application for conscientious objector status. Holding that Section 10 (b) (3) barred pre-induction review in such circumstances, the Court noted that the board's action, unlike in Oestereich, "inescapably involves a determination of fact and an exercise of judgment." 393 U.S. at 258, 89 S.Ct. at 426. This distinction, which the Supreme Court has reiterated and applied in several succeeding cases,[1] is the crucial determinant of the court's jurisdiction.

■ In the case before the court, the plaintiffs do not seek review of "the numerous discretionary, factual and mixed law-fact determinations which a Selective Service Board must make prior to issuing an order to report for induction." Oestereich v. Selective Service System Local Board No. 11, supra, 393 U.S. at 240, 89 S.Ct. 414 (Harlan, J., concurring). Rather, plaintiffs argue that the actions of the Selective Service System in ordering conscientious objectors to report for civilian work at a time when other registrants were not being ordered to report for induction is a clear departure from the System's statutory mandate. This claim, raised by regis-

---

1. Although Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), limited the scope of Oestereich's exception to Section 10(b) (3), Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), made it clear that the exception was not so narrow as to be insignificant. Applying the Oestereich rationale to a statutory deferment, the Court observed:

"In both situations [Oestereich and Breen] a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service. In both cases the order for induction involved a 'clear departure by the board from its statutory mandate,' Oestereich, supra [393 U.S.] at 238 [89 S.Ct. 414], and in both cases § 10(b) (3) of the Act should not have been construed to require the registrants to submit to induction or risk criminal prosecution to test the legality of the induction order." 396 U.S. at 467–468, 90 S.Ct. at 668.

In its most recent pronouncement on the subject, the Court emphasized "objective certainty of status" as prerequisite to a registrant's right to pre-induction review. Fein v. Selective Service System Local Board No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (March 21, 1972). Although this case presents a somewhat novel question in an unusual posture, plaintiffs here yet satisfy the jurisdictional requirements the Supreme Court enunciated in Oestereich, Breen and Fein.

trants whose entitlement to conscientious objector status is an objective certainty, presents an undiluted question of law which is appropriate for resolution in pre-induction judicial proceedings. *See, e. g.,* Swift v. Director of Selective Service, 145 U.S.App.D.C. 224, 448 F.2d 1147 (1971); Liese v. Local Board No. 102, 440 F.2d 645 (8th Cir. 1971); Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504 (1969); Shea v. Mitchell, 137 U.S. App.D.C. 227, 421 F.2d 1162 (1970); National Student Ass'n v. Hershey, 134 U.S. App.D.C. 56, 412 F.2d 1103 (1969). Accordingly, the court concludes that jurisdiction is proper.[2]

### Class Action

The named plaintiffs also seek to prosecute this suit as a class action. The court is satisfied that plaintiffs have met the requirements of Rule 23 of the Federal Rules of Civil Procedure. The class is numerous; the question presented is a pure question of law common to all members of the class; the claims and defenses of the representative parties are typical; and the named plaintiffs will fairly and adequately protect the interests of the entire class. Moreover, if this suit were not permitted to proceed as a class action, the defendants might be subjected to inconsistent or varying adjudications with respect to individual members of the class. Especially when it is plain, as it is here, that the defendants are acting on precisely the same grounds as to each member of the proposed class, the courts should avoid creating a situation which might result in establishing incompatible standards of conduct for the defendants. Accordingly, the court concludes that this suit should proceed as a class action. *See* Gregory v. Hershey, 311 F.Supp. 1 (E.D. Mich. 1969), rev'd on other grounds sub nom. Gregory v. Tarr, 436 F.2d 513 (6th Cir. 1971).

### Factual Background

The operative facts with regard to plaintiffs' claims center about the implementation of what have been labelled the "order of call" provisions of the Act and regulations. Section 6(j) of both the 1967 and 1971 versions of the Military Selective Service Act, 50 U.S.C.App. § 456(j), provides that registrants determined to be conscientious objectors to participation in war shall be ordered to perform civilian work in lieu of induction. The implementing regulation, 32 C.F.R. § 1660.20, specified that a civilian work order "shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O, unless he has volunteered for such work." The new regulations, effective December 9, 1971, contain a parallel statement. 32 C.F.R. § 1660.4.

The order of call regulations are intricate. Under 32 C.F.R. § 1631.7(b), registrants are to be inducted in the following order:

(1) Volunteers who have not attained the age of 26 years in the se-

---

2. The problem of alleging the requisite jurisdictional amount under 28 U.S.C. § 1331(a) in pre-induction suits has never been satisfactorily resolved. In Boyd v. Clark, 287 F.Supp. 561 (S.D.N.Y.1968), aff'd 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed. 2d 511 (1969), the Supreme Court explicitly declined to reach this jurisdictional question. The lower federal court cases have either ignored the problem or found the requisite amount in such things as "the pecuniary rewards of a college education," Walsh v. Local Board No. 10, 305 F.Supp. 1274, 1276 (S.D.N.Y.1969), or the speculative diminution of "future earning capacity," Berk v. Laird, 429 F.2d 302, 306 (2d Cir. 1970), or the "difference" between what a registrant was earning in his present employment and what he would earn at his civilian work assignment, Rheingans v. Clark, 314 F. Supp. 1398 (N.D.Cal.1968), rev'd on other grounds sub nom. Rheingans v. Mitchell, 438 F.2d 345 (9th Cir. 1971). Although the court has some difficulty with this approach, it cannot hold at this late date that pre-induction judicial review is unavailable under Section 1331(a). In any case, plaintiffs here made an appropriate offer of proof on this question at trial which the defendants did not seriously dispute.

quence in which they have volunteered for induction.

(2) Nonvolunteers in the Extended Priority Selection Group in the order of their random sequence number . . . .

(3) Nonvolunteers in the First Priority Selection Group in the order of their random sequence number . .

(4) Nonvolunteers in each of the lower priority selection groups, in turn, within the group in the order of their random sequence number . . . .

(5) . . . .

(6) . . . .

(7) . . . .

32 C.F.R. § 1631.7(c) defined the various priority selection groups as follows:

(1) Extended Priority Selection Group consists of registrants who on December 31 were members of the First Priority Selection Group whose random sequence number had been reached but who had not been issued

Orders to Report for Induction.

(2) First Priority Selection Group:

(i) 1970. In the calendar year 1970, nonvolunteers in Class I–A or Class I–A–O born on or after January 1, 1944, and on or before December 31, 1950, who have not attained the 26th anniversary of the dates of their birth.

(ii) 1971 and later years. In the calendar year 1971 and each calendar year thereafter, nonvolunteers in Class I–A or Class I–A–O who prior to January of each such calendar year have attained the age of 19 years but not of 20 years and nonvolunteers who prior to January 1 of each such calendar year have attained the age of 19 but not of 26 years and who during that year are classified into Class I–A or Class I–A–O.

(3) Lower priority selection groups. One or more priority selection groups lower than the First Priority Selection Group in a given year.

A registrant's random sequence number was deemed to have been reached whenever his local board had issued at any time during the calendar year an order to report for induction to another registrant in the same priority selection group and subgroup who had been assigned that or a higher random sequence number.

32 C.F.R. § 1631.7(d) provided for the removal of registrants from the First Priority Selection Group upon expiration of their year of eligibility. Registrants whose random sequence numbers were *not reached* by December 31 during the calendar year were assigned to the priority selection group which was next below the First Priority Selection Group for the immediately succeeding calendar year. 32 C.F.R. § 1631.7(d) (2). Registrants whose random sequence numbers *were reached,* but who had not been issued orders to report for induction during the calendar year, were assigned to the Extended Priority Selection Group (hereinafter "EPSG") for the immediately succeeding calendar year. 32 C.F.R. § 1631.7(d) (4). The liability of this latter group was explicitly limited by § 1631.7(d) (5) which provides that members of the EPSG who were not issued orders to report for induction and originally scheduled for a date prior to April 1, shall forthwith be assigned to the lower priority selection group to which they would have been assigned had they never been assigned to the EPSG.

On November 10, 1971, the Selective Service System further refined the order of call regulations by dividing the EPSG into subgroups. In its published version, Local Board Memorandum (hereinafter "LBM") No. 99 provides that "there shall be subgroups within the Extended Priority Selection Group. Registrants who first entered the Extended Priority Selection Group in 1971 shall be assigned to EPSG–A. Registrants who first entered the Extended Priority Selection Group in 1972 shall be assigned to EPSG–B. A new subgroup shall be established in this manner each succeeding year." Registrants in each subgroup

were to be called after volunteers and prior to members of the First Priority Selection Group, with all members of EPSG–A to be called ahead of members of EPSG–B. However, selective service registrants who were classified I–A and I–A–O, and who were members of either of these two subgroups, were not being ordered to report for induction during the first three months of 1972. Because of various procedures adopted by the Selective Service System in response to the hiatus in inductions, which has continued substantially uninterrupted since July 1, 1971, registrants in EPSG–A were relieved of primary vulnerability to induction on March 27, 1972, and registrants in EPSG–B were similarly relieved by operation of law on April 1, 1972. As a consequence of being placed in the second priority selection group on these dates, all such registrants have become virtually immune from liability for induction.

This is not, however, what has happened to registrants classified as conscientious objectors. Although LBM No. 99, dated November 10, 1971, and Letter to All State Directors (hereinafter "LTASD") 00–50, dated December 14, 1971, specifically referred to the placement in EPSG–A and EPSG–B of all registrants classified I–A, I–A–O, and I–O, the Director of the Selective Service System also promulgated additional directives pertaining to registrants classified as conscientious objectors. On December 14, 1971, defendant Tarr first issued LTASD 00–51 which directed the issuance of new SSS Form 155 (Selection for Alternate Service; Rights and Obligations of Conscientious Objectors in the Alternate Service Assignment Process) to all conscientious objectors whose random sequence numbers had been reached, *but who had not yet been issued Form 153* (Order to Report for Civilian Work and Statement of Employer). On January 11, 1972, the Se-

lective Service System amended LTASD 00–51 to direct the issuance of SSS Form 155 to all registrants classified as conscientious objectors *who had previously been issued a former SSS Form 152* (Special Report for Class I–O Registrants). A month later, on February 14, 1972, the Director issued Temporary Instruction No. 660–1 which also attempted to apply the new regulations to conscientious objectors who were already in processing on the date the regulations became effective. The significance of both Temporary Instruction No. 660–1 and the amended version of LTASD 00–51 for this litigation is that they identified former SSS Form 152 as the functional equivalent of an induction order.[3]

The net result of these rules was that any member of the 1971 EPSG *(from the 1970 First Priority Selection Group)* classified I–O who had been issued a former SSS Form 152 before April 1, 1971 was issued an SSS Form 155 immediately. If such a registrant had not been issued an SSS Form 152 before April 1, 1971, he was placed in the Second Priority Selection Group. Any registrant who was reclassified I–O in 1971 and issued a former SSS Form 152 prior to November 9, 1971 was also issued an SSS Form 155 immediately. If such a registrant had not received former SSS Form 152 prior to November 9, 1971, he was placed in the EPSG–A and any SSS Form 155 which might have been issued was cancelled. Any member of the *1971 First Priority Selection Group* whose random sequence number was 125 or below, and who had been issued a former SSS Form 152 prior to November 9, 1971, was immediately issued SSS Form 155. If such a registrant had not been issued former SSS Form 152 prior to November 9, 1971, he was placed in the EPSG–B. The two subclasses of conscientious objectors challenging this scheme consist of those registrants in the 1971

---

3. During the period involved in this case, defendant Tarr issued other directives which are relevant, but not crucial to a complete understanding of the factual background of this litigation. These directives are described in Gardiner v. Tarr, 341 F.Supp. 422 (D.D.C. April 1972) (Flannery, J.).

**1126**

First Priority Selection Group who received SSS Form 152 before November 9, 1971 and those in the 1971 EPSG who received former SSS Form 152 before April 1, 1971 and who then subsequently received an SSS Form 153 ordering them to report for civilian work in 1972.

### Legal Issues

*1. Were plaintiffs "locked into" alternate service prior to November 9, 1971?*

Defendants' position is basically that all of the members of the plaintiff class were "locked into" alternate service because the System had found them physically acceptable, reached their random sequence numbers, and issued timely SSS Form 152s. While the defendants hedge their argument by pointing out that prior to December 10, 1971, no official form used in the processing of conscientious objectors was directly "equivalent" to an induction order, SSS Form 252, the underpinning of defendants' position is in fact a posited "equivalence" between SSS Form 152 and SSS Form 252. Plaintiffs counter that SSS Form 152 was in no sense equivalent to an induction order. Rather, they argue, SSS Form 153, which directed a conscientious objector to report for alternate service, was equivalent in fact and in law to SSS Form 252, which directed a registrant to report for induction. The court is constrained to agree with plaintiffs' characterization.

Former SSS Form 152 did not purport to be equivalent in any way to an induction order. It was designated as a "Special Report For Class I–O Registrants" and requested information pertaining to work preferences, experience, and related subjects.[4] In fact, it specifically referred to the order, SSS Form 153, which did serve an equivalent function to an induction order:

"In no case will you be required to perform work until you have been mailed an Order to Report for Civilian Work and Statement of Employer (SSS Form 153). This order will allow you a minimum of ten (10) days after the date on which it is mailed to you to report to work. However, your local board will not order you to work prior to the time you would have been ordered to report for induction if you had not been classified in Class I–O . . . ."

SSS Form 152, however, was issued pursuant to LBM No. 64 within 10 days after a Statement of Acceptability (DD Form 62) had been mailed to a conscientious objector or within 10 days after he had failed to take a scheduled physical examination. It was issued even if the registrant's number had not been "reached" or the registrant was otherwise unavailable for alternate service. But no order actually to perform alternate service could legally be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified I–O. 50 U.S.C. App. § 456(j); 32 C.F.R. § 1660.20. Accordingly, the court concludes that SSS Form 152 was not equivalent for any purpose to an induction order.[5]

---

4. New SSS Form 152 is explicitly labelled as a "Conscientious Objector Skills Questionnaire" and designed to elicit information regarding the registrant's skills.

5. Even if, by some leap of the imagination, the court concluded that SSS Form 152 was conceivably equivalent to an induction order, the defendants have admitted that such forms were issued to registrants classified as conscientious objectors *at an earlier time* than they would have been issued orders to report for induction had they been classified I–A or I–A–O. On the other hand, to the extent that the defendants point to SSS Form 152 as "equivalent" reluctantly, and rely primarily on their alternative position that comparing the processing of I–O's and I–A's is in some respects like comparing apples and oranges, the court is simply, at a loss to discover any basis for the conclusion the defendants have reached, namely, that somehow the plaintiff class was "locked into" alternate service before the respective cut-off dates in 1971.

Only SSS Form 153 has "induction order" characteristics. Like SSS Form 252, it orders the registrant to report to a certain place on a certain date for service; knowing failure or neglect to obey either order subjects a registrant to criminal prosecution. *See Generally* United States v. Yeouze, 335 F.Supp. 223 (D.N.H.1972). Moreover, the Selective Service System itself has consistently equated SSS Forms 153 and 252 in the past. *See, e. g.,* 32 C.F.R. § 1625.2; 36 Fed.Reg. 21549 (November 10, 1971) (LBM No. 99). The record discloses that it continues to do so. *See* 37 Fed. Reg. 5339 (March 14, 1972), 6213 (March 25, 1972). In the face of this evidence of "equivalence" between SSS Forms 153 and 252, the defendants' present attempts to transmute SSS Form 152 into some sort of constructive selection device is unavailing. The court concludes that until a conscientious objector was actually issued an order to report for civilian work, SSS Form 153, he was not obligated to perform alternate service. Accordingly, on January 1, 1972, plaintiffs, who had not been issued such orders, were entitled to be placed in appropriate subgroups of the 1972 EPSG along with their I-A and I-A-O counterparts who had not received induction orders, SSS Form 252, prior to November 9, 1971.[6] Since no members of that group have subsequently been issued orders to report for induction, all orders to report for alternate service which have subsequently been issued to the members of the plaintiff class are in violation of Section 6(j) of the Military Selective Service Act, 50 U.S.C. App. § 456(j), and the regulations adopted pursuant thereto.

*2). Are the directives promulgated by the Director of the Selective Service System, in the form of Letters to All State Directors and Temporary Instructions, "rules or regulations" which must be published in the Federal Register?*

Plaintiffs attack various of the directives at issue in this case on the additional ground that the Selective Service System failed to pre-publish for comment and re-publish in final form the proposed "regulations" contained therein in the Federal Register. Defendants take the position that these directives are excluded from the publication requirements generally applicable to the Selective Service System. The court turns now to this issue.

The Administrative Procedure Act requires in pertinent part, 5 U.S.C. § 552, that a government agency publish:

(A). . . .

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

---

**6.** The members of this group classified I-A and I-A-O were placed in the Second Priority Selection Group at the expiration of their period of extended liability. In fact, members of this group who were issued valid induction orders in 1971, which were later "postponed," have had their induction orders cancelled in accordance with the provisions of Temporary Instruction No. 631-1 (February 2, 1972) and were also placed in the Second Priority Selection Group. Even under the defendants' theory of this case, not affording similar relief to conscientious objectors who received SSS Form 152 in 1971, but whose orders to report for civilian work were, in a sense, "postponed," would offend the "in lieu" language of Section 6(j) of the Act, 50 U.S.C.App. § 456(j).

Section 13(b) of the Military Selective Service Act, 50 U.S.C. App. § 463(b), provides that the publication requirements of the Administrative Procedure Act apply to the Selective Service System and further provides that the System pre-publish proposed regulations:

[N]o regulation issued under this Act shall become effective until the expiration of thirty days following the date on -which such regulation has been published in the Federal Register. After the publication of any regulation and prior to the date on which such regulation becomes effective, any person shall be given an opportunity to submit his views to the Director on such regulation, but no formal hearing shall be required on any such regulation.

This statutory provision is implemented by Executive Order No. 11623, 36 Fed. Reg. 19963 (October 14, 1971), which delegates to defendant Tarr the authority to prescribe and the duty to publish rules and regulations in conformity with the Act.

■ The court concludes that the directives here involved, which purported to alter significantly the rules and regulations pertaining to the order of call of conscientious objectors, are required to be published in conformity with the provisions quoted above. The defendants may not avoid those requirements by means of labels. "[I]t matters little whether [the] directive is a 'rule,' an 'order,' or a set of 'instructions,' or only a sui generis 'directive'. Whatever it is in law, it purports to be an authoritative declaration of policy issued for the guidance of the [Selective Service] System's line officers." National Student Ass'n v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1115 (1969). The court cannot hold that the publication requirements of the Act hinge on the particular format the Selective Service System chooses to issue authoritative instructions couched in mandatory terms.

The parties also skirmish at length over the definition of what is covered by the publication requirements of the law. Defendants rely on the narrow reference to "regulations" in the amendment of Section 13(b), 50 U.S.C. App. § 463(b), to support their restrictive interpretation of those requirements. Plaintiffs point to the language of the implementing executive order which refers to "any rule or regulation." This quibbling is not helpful in resolving the issue, but even a technical definitional analysis helps the plaintiffs more than the defendants. Registrants classified I–A or I–A–O are to be selected and ordered to report for induction under such "rules and regulations" as the President may prescribe. 50 U.S.C. App. § 455(a). Registrants classified I–O, however, are to be selected and ordered to report for civilian work subject only to such "regulations" as the President may prescribe. 50 U.S.C. App. § 456(j). Therefore, if the unpublished directives at issue here are not regulations, as the defendants claim, defendant Tarr has exceeded his authority under § 456(j); if they are regulations, as the plaintiffs claim, defendant Tarr has violated § 463(b). The court's decision, however, does not depend solely on "labels" or "definitions."

The court is of the view that the "substance" of the directives contained in the various Letters to All State Directors and Temporary Instructions is what makes them "regulations." The Selective Service System regularly treats all its substantive directives, regardless of their form, as equivalent in force and binding in effect. The record in this case is rife with examples illustrating that the System has used different formats, at various times, to alter, amend, or rescind the regulations. *See, e. g.*, Temporary Instruction 660–1 *superseding in part* LBM No. 99; LBM No. 87 *amending* 32 C.F.R. § 1622.15(b) (2); LBM No. 122 *nullifying* 32 C.F.R. § 1622.25(a). While the System may also use certain of these formats to issue informal instructions and informational advice on "housekeeping matters," when it uses them to issue what are in fact substantive regulations, it must comply

with applicable publication requirements. This is clearly what occurred here. Accordingly, the court concludes that the various Letters to All State Directors and Temporary Instructions here under attack are "regulations" subject to Section 13(b) of the Act, 50 U.S.C. App. § 463(b), and the implementing executive order. Those that did not comply with the publication requirements contained therein, including LTASD 00–51 (December 14, 1971), LTASD 00–51 (Revised) (January 11, 1972) and Temporary Instruction 660–1 (February 14, 1972), are void.[7]

*Conclusion*

Conscientious objectors may be ordered to perform alternative service only "in lieu of induction," 50 U.S.C. App. § 456(j), and only subject to such regulations as are pre-published and published in the Federal Register, 50 U.S.C. App. § 463(b). The actions of the defendants in this case contravene the requirements of both statutes.[8]

It appearing that plaintiffs have satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, it is ordered that leave to maintain the action in Levi v. Tarr, C–72 458, consolidated for hearing with Piercy v. Tarr, C–72 448, by order of court, is granted;

It further appearing that there is no genuine issue as to any material fact, and that plaintiffs are entitled to judgment as a matter of law, it is ordered that plaintiffs' motion for summary judgment is granted;

In conformity with the foregoing opinion and orders,

It is further ordered that defendants shall forthwith cancel any work orders issued to members of the plaintiff class after the last date that similarly situated registrants classified I–A and I–A–O were issued orders to report for induction and shall forthwith place the members of the plaintiff class into the 1972 Second Priority Selection Group;

It is further ordered that defendants are permanently enjoined from enforcing or attempting to enforce any orders to report for civilian work (SSS Form 153) issued to the members of the plaintiff class at a time when similarly situated registrants classified I–A and I–A–O were not being issued orders to report for induction (SSS Form 252);

It is further ordered that defendants are permanently enjoined from issuing or attempting to issue any future orders to report for civilian work to the members of the plaintiff class unless and until members of the 1972 Extended Priority Selection Group classified I–A and I–A–O, who have now been placed in the 1972 Second Priority Selection Group, are lawfully issued orders to report for induction.

7. See 5 U.S.C. § 552(a) (1): "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."

8. In reaching this conclusion, the court has examined the pertinent cases which the parties have called to its attention. The court of course places primary reliance on Gardiner v. Tarr, 341 F.Supp. 422 (D.D.C. April, 1972) (permanent injunction), which is precisely on point. Other cases on this question are still in preliminary stages; see Smith v. Tarr, Civil Action No. 72–726–Civ–CA (S.D.Fla. May 18, 1972) (preliminary injunction); Hollingsworth v. Tarr, No. 9454 Civil (D.N.M. May 22, 1972) (TRO); Moller v. Tarr, No. 72–Civ–2064 (S.D.N.Y. May 16, 1972) (TRO); Walsh v. Tarr, Civil Action No. 72–1138–G (D.Mass. March 31, 1972) (TRO).

United States v. Dudley, 451 F.2d 1300 (6th Cir. 1971), provides additional support for the court's decision; to the extent that United States v. Isenring, 419 F.2d 975 (7th Cir. 1970), suggests a different result, the court declines to follow it.